Wilson *v.* Carpenter.

———————

Wilson *v.* Carpenter.

| 62 | 495 | |
|----|-----|-----|
| 140 | 125 | |
| 62 | | 495 |
| 169 | | 543 |
| f169 | | 547 |

Contract.—*Specific Performance.—Mortgage.—Defeasance, Effect of Surrender of.—Counter-Claim.—Redemption.—Instruction.*—A complaint to enforce specific performance alleged, that the plaintiff, on a certain date, was the owner of certain lands, and, being desirous of obtaining loans of money from time to time, agreed with the defendant, that, in consideration of his undertaking to endorse for the plaintiff as he might direct, not exceeding a certain amount at any one time, he would convey to said defendant the lands mentioned, to indemnify him on account of said endorsements; that, in pursuance of such agreement, said lands were so conveyed to the defendant by deed; that, at the same time, the defendant executed and delivered to plaintiff a defeasance, binding himself to reconvey said lands, if saved harmless from said endorsements; that, subsequently. the plaintiff and defendant had an accounting of all matters of indebtedness between them, and nothing was found to be due to the defendant from the plaintiff; and that the plaintiff then notified the defendant that he was released from all former endorsements, and would not be required to make any more, and demanded a reconveyance of said lands, which the defendant refused. A second paragraph charged a refusal of the defendant to endorse for the plaintiff as stipulated. To this complaint a general denial was filed, and also a special paragraph of answer, averring, that, prior to the conveyance of said lands to the defendant, the plaintiff had executed to him a note, together with a mortgage on said lands to secure its payment; that, after the execution of said deed and defeasance, the plaintiff became indebted to the defendant in other sums of money; that, on said settlement between the parties, it was agreed that the defendant should release the plaintiff from said mortgage and all other claims, and that the plaintiff should surrender said defeasance for cancellation, and that defendant should hold said lands in fee-simple and discharged of all conditions; that the plaintiff so surrendered and delivered up said defeasance as cancelled; and that the defendant thereby released him from all demands, concluding with a prayer that the defendant should be decreed the owner of said lands, free from the equity of redemption.

*Held*, that the surrender of the defeasance, under the circumstances alleged, vested in the defendant an absolute title to the lands in suit.

*Held*, also, that the special paragraph of answer can not perform the double office of answer and counter-claim, and, having been treated by the parties as a counter-claim, it should be so regarded, and is sufficient on demurrer.

*Held*, also, that an instruction to the jury in such case, that the plaintiff was required to establish more on the trial, as regards the matters embraced in such settlement, than the conditions of the defeasance stipulated, was erroneous.

*Held*, also, there being evidence on the trial tending to show, that, at the time of such settlement, the defendant promised orally to reconvey to the plaintiff, and that he had made some admissions as to the terms of the settlement, and as to his promise or liability to reconvey those lands, that an instruction, which told the jury that "this testimony can be considered by you in determining the question as to whether there was such an accounting had between the parties or not, but it can not be considered as fixing any original liability on the defendant," and that, if the plaintiff conveyed to the defendant absolutely in the first instance, "his after oral promise to reconvey would not be binding, but the evidence may be considered in so far as it tends to throw light upon the question as to whether there was a full and final accounting between the parties," in connection with the defeasance, was erroneous as probably misleading the jury as to the weight to which such evidence was entitled.

From the Shelby Circuit Court.

*T. B. Adams, L. T. Michener, K. M. Hord* and *A. Blair,* for appellant.

*B. F. Love, S. Major* and *A. Major,* for appellee.

NIBLACK, C. J.—This was a proceeding by the appellant, against the appellee, to enforce the specific performance of a contract concerning real estate.

The complaint was in two paragraphs.

The first paragraph alleged, that, on the 6th day of January, 1874, the appellant was the owner of several tracts of land, situate in Shelby county, Indiana, amounting in the aggregate to two hundred and fourteen acres, and being desirous of obtaining loans of money from time to time to carry on his business, agreed with the appellee, that, in consideration of his, the appellee's, undertaking and prom-

ising to endorse for him, from time to time, as he, the ap-
pellant, might require and direct, not to exceed in the
aggregate at any one time the sum of three thousand dol-
lars, he would convey to the appellee said several tracts of
land to indemnify and save him harmless on account of said
contemplated endorsements; that, in pursuance of such
agreement, he, the appellant, did on that day convey said
tracts of land to the appellee by a good and sufficient deed
of conveyance; that, at the same time, the appellee execut-
ed and delivered to the appellant his agreement in writ-
ing, known as a defeasance, binding himself to reconvey
said lands to the appellant on being indemnified and saved
harmless on account of any liability as endorser under said
agreement between the parties; that, on the 1st day of
March, 1875, the appellant and appellee had a full and
final accounting of all matters of indebtedness between
them, including endorsements by the appellee for the
appellant, and that, upon such accounting, nothing was
found to be due from the appellant to the appellee; that
the appellant then notified the appellee that he was re-
leased from all former endorsements, and that he would
thereafter not be required to make any further endorse-
ments for him, the appellant; that the appellant there-
upon demanded of the appellee a reconveyance of said
lands, in accordance with the terms of their said agree-
ment; that, on the 15th day of March, 1875, the appellant
tendered to the appellee a deed in proper form, already pre-
pared for his signature, reconveying said lands to the appel-
lant, but that the appellee refused to execute said deed, or
to reconvey said lands in any other manner whatsoever.

The second paragraph was similar to the first, except
that it charged a failure and refusal on the part of the
appellee to endorse for the appellant, as stipulated between
the parties, and a demand for a reconveyance on that ac-
count.

The prayer of the complaint was, that the deed from the appellant to the appellee should be set aside, and a reconveyance of the lands decreed.

The appellee answered in two paragraphs.

The first paragraph set out the execution of the deed to the appellee, and of the defeasance to the appellant, very much as stated in the complaint, and averred, that on the 13th day of September, 1865, the appellant executed to the appellee his note for four thousand dollars, due ten years, after date, together with a mortgage on the lands described in the complaint, to secure the payment of said note ; that, after the execution of said deed and defeasance, the appellant became indebted to the appellee in divers other sums of money, giving a detailed statement of them, amounting to the aggregate sum of ten thousand four hundred and eight dollars; that, on the 1st day of March, 1875, on a full settlement of all mutual dealings and demands, it was agreed that the appellee should release the appellant from said last named mortgage debt and all other claims and demands whatsoever, and that the appellant should surrender to the appellee the above named defeasance for cancellation and as null and void, and that the appellee should thereafter hold the lands therein referred to absolutely, in fee-simple, and discharged of all the conditions and qualifications imposed by and contained in said defeasance ; that, in pursuance of such agreement the appellant delivered up to and surrendered the said defeasance as cancelled and extinguished, and thereupon the appellee released to the appellant all claims and demands of every kind and executed to him a receipt in full therefor; that thereby the said defeasance was fully executed and discharged, and the appellee became the owner, in fee-simple and absolutely, of the lands described in the complaint, concluding with a prayer that the appellee should be adjudged and decreed the owner of said lands, free from all right, title, interest and equity of redemption of the appellant.

The second paragraph was in general denial of the complaint.

A demurrer to the first paragraph of the answer was overruled, and a reply in denial was filed.

A trial resulted in a general verdict for the appellee, accompanied by some answers to interrogatories which were not inconsistent with it, and a judgment followed, decreeing, amongst other things, that the appellee should hold, possess and enjoy the lands in controversy, free and discharged of all right, title and equity of redemption of the appellant.

A good many questions were reserved on the evidence and on the instructions of the court, which were brought to the attention of the court in proper form, by a motion for a new trial.

The first question for us to consider here, in its natural order, is the sufficiency of the first paragraph of the appellee's answer.

That paragraph is somewhat informal in its construction, as it purports on its face to be both an answer and a counter-claim—a double office, which, this court has decided, a single pleading can not perform. *Campbell* v. *Routt*, 42 Ind. 410.

As an answer it sets up affirmative matter inconsistent with the allegations of the complaint, and avers the entering into a new agreement, upon a sufficient consideration, which constituted a good defence to the appellant's claim for a specific performance of the original contract between the parties. 1 Story Equity, sec. 770 ; 1 Greenl. Evidence, secs. 302, 304; Browne Statute of Frauds, secs. 409, 429, 430, 433 and 434; *Arnoux* v. *Homans*, 25 How. Pr. 427 ; *Billingsley* v. *Stratton*, 11 Ind. 396 ; *Baldwin* v. *Salter*, 8 Paige, 473.

Considered, therefore, as an answer merely, it was sufficient on demurrer.

Upon the trial, however, it was treated principally, if not entirely, as a counter-claim, and it was evidently on that theory that a judgment was rendered in favor of the appellee, as above recited. It is, consequently, as a counter-claim that we have mainly to consider it here.

Its sufficiency as a counter-claim, as well as an answer, has been very ably discussed by both parties, and their very elaborate citation of authorities bearing upon the points at issue between them has greatly assisted us in coming to a conclusion upon the legal questions involved in the discussion.

It is very earnestly contended by the appellant, that the alleged surrender and cancellation of the defeasance, set up in the paragraph under consideration, did not in any manner divest the original contract between the parties of its mortgage character, and hence constituted no defence to his complaint, and that, for still stronger reasons, such surrender and cancellation did not make out a case for the affirmative relief demanded in that paragraph. Many of the authorities cited by him lay down abstract rules which would seem to support the positions thus assumed.

But the appellee insists, that the surrender and cancellation of the defeasance, averred by him, constituted a new and binding contract between the parties, which superseded the original agreement, and which practically converted the deed from the appellant to him into an absolute conveyance in fee-simple.

That the deed and defeasance, taken together, constituted only a mortgage from the appellant to the appellee, is a proposition too well established to require the citation of authorities to sustain it. As to that there is no controversy between the parties here. But what effect, if any, did the surrender of the defeasance, for cancellation, have on the original agreement between the parties, conceding it to have been surrendered in the manner and under the circumstances alleged by the appellee?

In 2 Washburn Real Property, p. 62, 4th ed., it is said :

" The doctrine universally applicable is, if once a mortgage, always a mortgage. Nor can it be made otherwise by any agreement of the parties made at the time of the execution of the deed, nor upon any contingency whatever. Equity will not admit of a mortgagor embarrassing or defeating his right to redeem the estate by any agreement which he may be induced to enter into in order to effect a loan.

" This does not preclude any subsequent *bona fide* agreement in respect to the estate between the parties ; and where a mortgagor voluntarily cancelled the instrument of defeasance which he held, it gave to the deed which it was intended to defeat the effect of an original absolute conveyance as between the parties."

In the case of *Remsen* v. *Hay*, 2 Edw. Ch. 535, it is, also, said : " There is nothing in the policy of the law to prevent a mortgagee from acquiring an absolute ownership, by purchase, from a mortgagor at any time subsequent to the taking of the mortgage and by a fresh contract to be made between them. Courts view with jealousy and suspicion any dealing between mortgagor and mortgagee to extinguish the equity of redemption ; but if it be fair and honest, on the part of the mortgagee, the purchaser will not be disturbed. The law only prohibits a mortgagee from availing himself of a stipulation contained in the mortgage deed, or in a separate instrument made at the same time, or of some covenant or agreement, forming a part of the same transaction with the loan and the taking of the security, by which he shall attempt, upon the happening of some event or contingency, to render the estate irredeemable and obtain an absolute ownership. In such cases, the maxim applies of ' once a mortgage always a mortgage.' *Henry* v. *Davis*, 7 Johns. Ch. 40 ; *Clark* v.

*Henry*, 2 Cow. 332. But it can not interfere with the right to foreclose, when the mortgage has become forfeited, nor with any fresh contract which the mortgagor may choose to make with the mortgagee for a sale or relinquishment of the equity of redemption and the vesting the latter with an irredeemable estate."

In 1 Hilliard on Real Property, p. 546, 4th ed., it is, also, said : " Where a deed is given, accompanied by a defeasance, which is not recorded, a subsequent surrender and cancelling of such defeasance, by agreement, for the purpose of giving the grantee an absolute title, without unfairness between the parties or as to strangers, and before any rights of creditors have intervened, will vest the absolute title in the grantee."

The same doctrine is also recognized in 1 Hilliard on Mortgages, 4th ed., p. 84, sec. 18. There are numerous reported cases to the same effect. See *West* v. *Reed*, 55 Ill. 242 ; *Falis* v. *Conway M. F. Ins. Co.*, 7 Allen, 46 ; *Rice* v. *Rice*, 4 Pick. 349 ; *Trull* v. *Skinner*, 17 Pick. 213 ; *Green* v. *Butler*, 26 Cal. 595 ; *Harrison* v. *The Trustees, etc.*, 12 Mass. 456 ; *Marshall* v. *Stewart*, 17 Ohio, 356 ; *Vennum* v. *Babcock*, 13 Iowa, 194.

After a careful review of the foregoing authorities, and of many others which we deem it unnecessary to specifically refer to here, we are of the opinion, that the surrender of the defeasance for cancellation, under the circumstances as alleged, vested in the appellee an absolute title to and ownership in the lands in suit.

The paragraph of the answer we are discussing, as we have already intimated, is not formally and technically pleaded as a counter-claim, and does not in precise terms ask for a recovery of the possession of the lands in dispute, or for a quieting of the appellee's title to those lands ; but we think it alleges substantial facts, sufficient to entitle the appellee to some kind of affirmative relief under it, and that it was properly held good upon demurrer.

On the trial both parties testified as witnesses, each in his own behalf. The appellant sustained generally the averments in his complaint, and the appellee those of his counter-claim. Both agreed in stating, that they had a full and final settlement of their dealings, on the 1st day of March, 1875, in the city of Shelbyville, which was consummated at the office of Mr. Love, of that city, where mutual receipts were interchanged between the parties, and where a bundle of papers, including certain notes, was passed over to the appellant, and the defeasance was handed over to the appellee; but they differed widely as to the terms on which the settlement was made, and as to the matters which were embraced within the settlement, as well as to the purpose for which the defeasance was handed over to the appellee. Several other witnesses also testified on the trial, some of whom corroborated the appellant and the remainder sustained the appellee; and on all material matters really in dispute between the parties there was a sharp conflict in the testimony.

The defeasance, which was in evidence, was upon the condition, " that said Peter O. Carpenter shall at any time reconvey and deed in fee-simple the above described land to the said Riley B. Wilson, after the said Riley B. Wilson shall have released and made free from endorsements or security, as above otherwise described, the said Peter O. Carpenter, upon the demand of the said Riley B. Wilson," —which, with the context, we construe to mean that Carpenter was to reconvey, on being made free from all endorsements as surety for Wilson.

By instruction known as No. 7, the court instructed the jury as follows :

" If the plaintiff has shown by a fair preponderance of the evidence, that he and the defendant had a full settlement and satisfaction of all the claims and accounts between them, and that, at or after the time of such settle-

ment, the plaintiff delivered the deed of defeasance to the defendant, on his promise to convey to plaintiff the land therein described, according to the terms of said defeasance, and that the defendant subsequently, on the demand of the plaintiff therefor, refused to make such conveyance, then you should find for the plaintiff."

This instruction required the appellant to establish more on the trial, as regards the matters which were embraced in the settlement between the parties, than the condition of the defeasance required, and it was for that reason, we must hold, erroneous.

On the trial there was evidence tending to show, that, at the time of the settlement between the parties, the appellee promised orally to reconvey the lands in dispute to the appellant; also tending to show, that, at or about the same time, he made some admissions as to the terms of the settlement, and as to his promise or liability to reconvey those lands. In relation to that evidence the court, by instruction known as No. 10, further instructed the jury as follows:

"Evidence was introduced by plaintiff, tending to prove oral promises, on the part of defendant, made at and after the time when the plaintiff claims there was a full and final accounting between them, to reconvey the premises in dispute to the plaintiff. This testimony can be considered by you in determining the question as to whether there was such an accounting between the parties or not. But it can not be considered as fixing any original liability on the defendant. If Wilson conveyed to Carpenter absolutely in the first instance, his after oral promise to reconvey would not be binding; but the evidence may be considered in so far as it tends to throw light upon the question as to whether there was a full and final accounting between the parties, in connection with the instrument of writing executed by Carpenter to Wilson and termed a deed of defeasance."

This instruction appears to us to have given too narrow an application to the evidence to which it related, and to have been framed in such a way as to have probably mis-led the jury as to the weight which such evidence was entitled to have in connection with all the other evidence. For these reasons we are constrained to hold that it was, also, erroneously given.

On account of these erroneous instructions, the judgment will have to be reversed.

Other alleged errors, occurring on the trial, have been brought to our attention, but, as they are subordinate to the questions which we have already considered, we deem it unnecessary to extend this opinion by ruling upon them.

The judgment is reversed, at the costs of the appellee, and the cause remanded for a new trial.

Opinion filed at May term, 1878.
Petition for a rehearing overruled at November term, 1878.