Gaff *et al. v.* Greer *et al.*

No. 8130.

## GAFF ET AL. *v.* GREER ET AL.

REAL ESTATE, ACTION TO RECOVER.—*Pleading.—Ejectment.—Quo Warranto.*
—In a complaint to recover possession of a church building and grounds,
it was disclosed that the right of the plaintiffs, as trustees, to exercise
power as such was in dispute, and that the point in controversy was
whether they or the defendants were rightfully trustees.

*Held,* that this did not render the complaint bad, and that it was not nec-
essary that the right to the office of trustee should first be settled by
*quo warranto.*

SAME.—*Churches.—Trustees.—Parties.*—A suit on behalf of a church, organ-
ized by the election of trustees pursuant to the statute, to recover its
church building and grounds, is properly brought in the name of its
trustees as such.

SAME.—*Defences in Ejectment.*—The statute admits all defences in eject-
ment under the general denial, and where special defences are also
pleaded in bar there is no available error in sustaining a demurrer to
them.

PRACTICE.—*Answer.—Counter-Claim.*—The same pleading can not perform
the double office of an answer and counter-claim, and where it has been
treated in the court below as an answer, it will be so regarded in the Su-
preme Court; that it demands affirmative relief does not fix its charac-
ter as a counter-claim.

SAME.—*Repeating Instructions.*—After the jury had retired they were re-
called by order of the court, and, after stating that he was informed that
the instructions given were not understood, the judge re-read the instruc-
tions to them in the presence of the parties.

*Held,* that such action was not error.

EVIDENCE.—*Waiver of Objection.*—Upon a trial involving a question of
church government, the plaintiff, to maintain his theory, read in evi-
dence extracts from a certain book, over the objection that it was not
shown that the book was recognized by the church as authority upon the
question. The defendant afterwards, to maintain his theory, read in
evidence other extracts from the same book upon the same point.

*Held,* that this was a waiver of the objection.

CHURCHES.—Where the highest tribunal of a church to which a question
of discipline or church law is carried decides it, having jurisdiction ac-
cording to the usages of the church, the decision binds the civil courts,
and they will not review it.

SAME.—Where the proper tribunal of a church has decided that certain
members of a local church under its jurisdiction have seceded, the fact
must be regarded as fixed, and it results as a consequence that they lose
all right to the property of the body, though they constituted a ma-

jority of its members, and in such case the remaining members retain its ownership, control and management.

INSTRUCTIONS.—*Evidence.*—*Directing Verdict.*—Where the evidence is without conflict, and that upon the controlling question in a cause is documentary, the effect of which is a question of law for the court, and if its proper construction will necessarily result in a verdict for the party having the burden of the issues, the court may peremptorily direct the jury to return such a verdict.

From the Jennings Circuit Court.

*W. S. Holman, C. S. Jelley, H. D. McMullen, D. T. Downey* and *S. R. Downey,* for appellants.

*J. D. Haynes, J. K. Thompson* and *D. H. Stapp,* for appellees.

BEST, C.—The appellees, as trustees of the Presbyterian Church of Aurora, Indiana, brought this action against the appellants to recover in-lot one hundred and sixty-eight (168), in said city, and the church building thereon. The action was commenced in the Dearborn Circuit Court, and the venue was changed to the Jennings Circuit Court. The complaint consisted of two paragraphs. The first was in the ordinary form for the recovery of real estate, and the second alleged specially all the facts upon which a recovery was sought. A demurrer for the want of facts was overruled to the second paragraph of the complaint, and an answer of three paragraphs was filed. The first was a general denial, and the others were special. A demurrer was sustained to the second and third paragraphs of the answer, a trial had, a verdict returned for the appellees, and, over a motion for a new trial, judgment was rendered upon the verdict.

The appellants assign as error the order of the court in overruling the demurrer to the second paragraph of the complaint, in sustaining the demurrer to the second and third paragraphs of the answer, and in overruling the motion for a new trial. These assignments will be considered in the order of their statement.

The second paragraph of the complaint is very long, con-

taining a history of the church since its organization, reciting the evidence of facts with great minuteness and particularity and, therefore, can not be copied in this opinion. The material facts averred, however, are these : That a difference arose in the church in 1877, as to the wisdom of longer employing Rev. Amzi W. Freeman as pastor of the church ; that, notwithstanding such fact, he was employed by the church on the 2d day of July, 1877, for two years, as "stated supply" ; that a minority of the members of said church, who are now represented by the appellees, appealed from such action to the Whitewater Presbytery, with which said church was then connected, and the Presbytery rescinded and annulled the action of the church in the employment of said minister ; that the majority, whom the appellants represent, thereupon withdrew from the church, and since have been holding possession of the property in defiance of its authority, claiming to be the trustees of said church ; that after such withdrawal the appellees were duly elected trustees of said church by the remaining members, in, conformity with the customs and usages of the church, and as such trustees are the owners of the property and entitled to its possession, which appellants unlawfully detain from them.

The appellants insist that it is apparent from this paragraph of the complaint that the real question in dispute is whether the appellants or the appellees are the legal trustees of said church, and that such question can not be determined in this action, but that the remedy to determine such dispute is by information in the name of the State on the relation of some person interested, in pursuance of the provisions of article. 44 of the statutes of 1876. That article provides that when any person shall hold or exercise any office, in any corporation created by the authority of this State, his right to do so may be determined by information prosecuted in pursuance of its provisions; but this remedy is not applicable to the case made by the complaint. The first paragraph of the complaint expressly, and the second substantially, avers

that the appellees, as trustees, are the owners and entitled to the possession of the property, and the appellants unlawfully detain it from them. These facts entitle them to maintain the action. The mere fact that it appears from the second paragraph of the complaint that their right to recover the property will probably be resisted on the ground that they are not the legal trustees does not preclude them from adopting such form of action as will enable them to obtain complete relief. They do not seek to obtain the office of trustee, nor to determine any claim that appellants may assert to it, but they assume that they are the legal trustees in the exercise of the functions of that office, and seek to recover the possession of property which belongs to such trustees. If they simply sought to have their right to the office determined there would be much force in the appellants' position; but, as they seek the possession of the property itself, they have selected the appropriate remedy. If, to recover, it becomes necessary to determine whether or not they are the legal trustees, we know of no reason why this question can not as well be determined in this form of action as any other. The object of the suit must determine the form of the action rather than the questions involved in the controversy. This objection can not prevail. *State, ex rel.,* v. *Shields,* 56 Ind. 521.

It is also insisted that the legal title is in the church as a corporation, and not in the trustees, and hence an action can not be maintained in the names of the trustees for the recovery of the property. This position is equally untenable. *Hamrick* v. *Bence,* 29 Ind. 500; *Drumheller* v. *First Universalist Church,* 45 Ind. 275; *Wiles* v. *Trustees, etc.,* 63 Ind. 206; *Watson* v. *Jones,* 13 Wal. 679.

This paragraph of the complaint was not bad for the reasons urged, and, therefore, no error was committed in overruling the demurrer to it.

The second and third paragraphs of the answer allege in substance, that the appellants have been duly elected trustees of said church by a majority of the members of the church

and of the congregation entitled to vote at such election, in accordance with the customs and usages of the Presbyterian Church; that they are the trustees, and as such own the property and are in the peaceable possession of the same, and are entitled to retain it; that after their election a minority of the church, who had refused to participate in such election, had refused to support the organization, and was dissatisfied with its management, held a pretended election, at which the appellees were selected as trustees, and, by virtue of such election, they now claim the possession of said property; that such pretended election was held in violation of the rules and regulations of the church, and that the appellees are not entitled to the possession of the property. These paragraphs each concluded with a prayer to quiet the title.

No fact was averred in these paragraphs that was not admissible in evidence under the general denial. In fact, the paragraphs were argumentative general denials. They deny that the appellees are the trustees of the church, by asserting that appellants are its trustees. As such, they were sufficient; but as these facts were admissible in evidence under the general denial, which remained on file, no available error was committed in sustaining the demurrer to them. This has often been decided by this court, as a reference to a few of the adjudged cases will readily show. *Patterson* v. *Lord,* 47 Ind. 203; *Smith* v. *Denman,* 48 Ind. 65; *Milner* v. *Hyland,* 77 Ind. 458.

The appellants, however, insist that these paragraphs were sufficient as counter-claims, and as such it was error to sustain the demurrer to them. The second paragraph commences thus: "And for further answer and counter-claim herein;" and the third commences, "And for further answer and counter-claim herein to the first paragraph of the plaintiffs' complaint." The appellees demurred to these paragraphs on the ground that they did not state facts sufficient to constitute a defence. The demurrers were sustained, and the appellants in this court treat these paragraphs as an answer, in their as-

signment of errors. It is well settled that a single pleading can not perform the double office of an answer and a counter-claim. It must be regarded as one or the other. *Campbell* v. *Routt,* 42 Ind. 410; *Blakely* v. *Boruff,* 71 Ind. 93.

These pleadings purported to be answers. They were demurred to as such, and, as the court evidently treated them as answers by sustaining a demurrer that raised no question to them as counter-claims, and as it is evident from the appellants' assignment of errors that they have been throughout the progress of the cause treated as answers, we think we must also thus regard them. *Wilson* v. *Carpenter,* 62 Ind. 495. It does not follow because a pleading demands affirmative relief that it is not to be regarded as an answer. *Porter* v. *Mitchell,* 82. Ind. 214. Thus regarded, there was, as before stated, no available error committed in sustaining the demurrer to them.

This brings us to the motion for a new trial, which embraces many reasons. These raise a few questions which will now be noticed. After the jury had retired the court sent for them, stated to them that he was informed that they did not fully understand the instructions that had been given them, and again, in the presence of appellants' counsel, re-read the instructions to them, after which appellants objected, and now insist that the action of the court was such error as ought to reverse the judgment. We think otherwise. If any objection existed to the action of the court, the appellants waived it by not making it. It is too late to object after a thing has been done, especially if done by the court in the presence of the party. Besides, it does not appear that any wrong was done. The mere act of re-reading a proper instruction to the jury is not error, and as no objection was made to the instructions themselves, they will be regarded as proper upon this question. Nor is it material how the court obtained the information. The presumption is that it was properly obtained. Besides, this did appellants no injury. There was no error in thus instructing the jury.

During the progress of the trial the appellees, to prove the

law of the church, used certain extracts from " Moore's Presbyterian Digest," to which appellants objected, on the ground that it was not shown to be recognized by the church as authoritative upon such question.   This objection can not now avail the appellants.   There was, as we think, sufficient proof offered by the appellees to authorize the use of such extracts ; but, however this may be, the appellants themselves used other extracts from said book in proof of their defence ; and this was, in our opinion, such an endorsement as now precludes them from questioning the authority of the work.   It would indeed be strange if appellants could use such work to establish a question of ecclesiastical law or church government deemed favorable to them, and could, at the same time, dispute its use by the appellees upon questions favorable to them. This they can not do.   There is, therefore, no error in this respect.

The material facts in this case are undisputed.   The church was organized prior to the 14th day of May, 1849, at which time the lot in question was conveyed to its trustees, naming them, among whom was Thomas Gaff, one of the appellants, and their successors in office.   In 1854 the present church edifice was erected upon said lot, and it has since that time, until the year 1877, been used by the united congregation of said church as a house of worship.   This church is within the limits of the Whitewater Presbytery, and for many years previous to 1877 was connected with, and formed a part of, said presbytery.   This presbytery was a part of the synod of Indiana South ; and this synod was connected with, and formed a part of, the General Assembly of the Presbyterian Church in the United States.   For many years prior to 1877, Rev. Amzi W. Freeman was the pastor of said church, and continued to be until the 22d day of May, 1877, when, in consequence of some differences that had arisen in the church, the presbytery required him to resign, which he did.   He, however, by direction of the presbytery, preached to the church as a supply, until the 2d of July, 1877, when he was elected

by a majority as a stated supply for two years from that time. The minority, fifty in number, whom the appellees represent, claimed that some of them had been illegally denied the right to vote at such election, and appealed to the presbytery which convened at Versailles in September thereafter.   The majority, ninety in number, whom the appellants represent, filed papers questioning the regularity of the proceedings by the minority, and the presbytery decided that such persons had the right to vote, and because it was denied them the election was invalid.   The presbytery also decided that the further employment of Rev. Amzi W. Freeman was unwise, and directed the church to secure the services of some other minister.   With this decision the majority were dissatisfied, and the presbytery refusing, upon application, to recede from its position, the majority, on the 9th of April, 1878, presented to the presbytery a written statement, reciting the grievances of the persons signing it, claiming that their rights under the rules of the church had been denied them, and concluded by saying that " Failing in this we have no other alternative but to withdraw from your ecclesiastical jurisdiction." This paper was referred to a committee, and upon its report the presbytery determined that when any portion of the members of a church withdraw from the jurisdiction of the presbytery, the remaining members constitute the church, and declared that the remaining members of this church will be recognized as such by the presbytery.   At the same time the Rev. Amzi W. Freeman applied for, and obtained, a letter of dismissal in order to connect with the Miami Conference of Congregational Ministers.  The presbytery met at Aurora during the same month, but the majority refused it the use of the church building, and has since held and controlled it, to the exclusion of the presbytery.   On the 9th of May following they elected the appellants, except Rev. Amzi W. Freeman, trustees of said church, in accordance with its forms and usages, immediately employed Rev. Amzi W. Freeman as pastor, and

since that time he has regularly preached to the congregation,. and the services have been conducted in conformity with the rites and ceremonies of the Presbyterian Church. The minority, under the direction of the presbytery, thereafter selected elders, elected the appellees trustees, employed another minister, demanded the possession of the church property, and,. this being refused, this suit was instituted for its recovery.

These undisputed facts are the only material facts disclosed by the evidence, and a statement of them becomes necessary to determine whether the court erred in refusing to allow appellants to prove that the law of the church authorizes an individual church to withdraw at will from the jurisdiction of the presbytery and thereafter exist as an independent Presbyterian church. This is the important question involved in this controversy, and upon its solution the rights of these appellants depend. The withdrawal of a church by a majority of its members from the jurisdiction of the presbytery, in the absence of a law to that effect, does not, it is insisted, operate as a secession from the church, and, hence, the court erred in refusing the proffered testimony. The appellees, on the other hand, insist that the presbytery in this case decided that such withdrawal did thus operate, and that such decision is conclusive of the question in the secular courts. In the Presbyterian system, a local church is but a member of a larger and more important religious organization, and is under its government and control. The session or local church is controlled by the presbytery, the presbytery by the synod, and the synod by the general assembly. The general church is controlled and governed by a body of constitutional and ecclesiastical laws, and exercise legislative and judicial power.. Questions of rule, usage or custom affecting the local church or the relation of its members to the organization, are subject to the judgment of these several bodies, called judicatories, in the order named, and the decision of the highest to which any question is carried is binding upon all. The decision of the presbytery in this case adjudged that the withdrawal of the

majority from its jurisdiction was a secession from the church. This can not, we think, be gainsaid. The order was that those who remained constituted and would thereafter be recognized by the presbytery as the church. This excluded those withdrawing, and if the order is binding the withdrawal operated as a secession from the church as fully and as completely as though these persons had voluntarily severed their connection with the church. The word "church" is here used for "congregation," as a withdrawal from the presbytery is, of course, a secession from the general organization. The judgment fixes the fact that the appellants seceded from the church, and if this decision binds the civil courts, the proffered testimony was properly excluded. In *Watson* v. *Jones,* 13 Wallace, 679, the Supreme Court of the United States, in a similar case, between two bodies of a Presbyterian church, each contending for the possession of the property, thus states the law: " In this class of cases we think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and State under our system of laws, and supported by a preponderating weight of judicial authority, is, that, whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final and as binding on them, in their application to the case before them."

In *Shannon* v. *Frost*, 3 B. Mon. 253, the court, on a similar question, said: " This court, having no ecclesiastical jurisdiction, can not revise or question ordinary acts of church discipline or excision. Our only judicial power in the case arises from the conflicting claims of the parties to the church property and the use of it. * * We can not decide who ought to be members of the church, nor whether the excommunicated have been justly or unjustly, regularly or irregularly cut off from the body of the church."

The same rule is asserted in the following cases: *State, ex*

*rel.,* v. *Farris,* 45 Mo. 183; *Robertson* v. *Bullions,* 9 Barb. 64, 134; *German, etc., Church* v. *Seibert,* 3 Pa. St. 282; *Gibson* v. *Armstrong,* 7 B. Mon. 481; *Harmon* v. *Dreher,* 1 Speers Eq. 87. These authorities establish the proposition that the decision of one of these judicatories is binding upon the courts where such questions arise. It is said, however, that the appellants had no notice, and for that reason the order is a nullity. This was a question for the presbytery. We can not revise its judgments nor determine its mode of procedure. This must be left to these bodies, otherwise they would be deprived of the power to construe the laws that govern them; besides, in this dispute, the appellants had several times been before the presbytery, and had filed the written statement that invoked the judgment under discussion. In the civil tribunals such steps would confer jurisdiction, and we can not say that the presbytery which assumed it did not possess it. *State, ex rel.,* v. *Farris, supra; Watson* v. *Jones, supra.*

The appellants being bound by the judgment of the presbytery, it follows that the court below did not err in rejecting the proffered testimony. This judgment establishes the fact that the majority had seceded from the church; having done so, they thereby forfeited all right to any portion of the church property. This proposition is well settled. *Hale* v. *Everett,* 53 N. H. 9 (16 Am. R. 82); *Watson* v. *Jones, supra.*

It is equally well settled that those who remain in the church, though they are in the minority, retain the property and are entitled to its control and management. *Ferraria* v. *Vasconcellos,* 23 Ill. 403; *McGinnis* v. *Watson,* 41 Pa. St. 1.

We are thus led to the conclusion, upon the undisputed facts in this case, that the appellees, who represent the church, are entitled to the possession of its property.

There is another question, however, that is urged upon our attention. The court instructed the jury to find for the appellees, and the appellants insist that since the burthen of the issues was upon them this instruction was wrong. It may be, and is conceded, that the cases are rare, indeed, where the

court would be authorized to instruct the jury to find for the party upon whom the burthen of the issues rests. This could not be done in any case where there was any conflict, however slight, in the evidence, as such direction would deprive the party of the right of trial by jury, which the Constitution provides shall remain inviolate, and we are not now prepared to say that this could be done where the fact to be established depends upon the weight of the evidence though the evidence may be undisputed. In such case the party is probably entitled to the opinion of the jury upon the question of fact. In this case the evidence upon the controlling question was documentary, its construction was for the court, and there was nothing for the jury to do but to return the fact as established by this evidence according to the law as announced by the court. This was done by a general direction, which involved an assumption of the fact which this evidence conclusively established, and as this fact was undisputed, and could not have otherwise been found, there was, we think, no error in the charge, at least none such as should reverse the judgment.

We have now passed upon all the material questions in the case, and, as there is no error in the record, the judgment should be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment be and it is hereby in all things affirmed, at the appellants' costs.

Petition for a rehearing withdrawn.