Raub v. Lemon—61 Ind. App. 59.

## RAUB v. LEMON ET AL.

[No. 8,509.   Filed April 13, 1915.   Rehearing denied November 5, 1915.   Transfer denied February 17, 1916.]

1. EJECTMENT.—*Title of Plaintiff.*—*Pleading and Proof.*—Plaintiff, in an action of ejectment, alleging legal title to the real estate in controversy, is bound thereby and can not recover on proof of an equitable title. p. 67.

2. EJECTMENT.—*Title of Plaintiff.*—*Evidence.*—*Review.*—Where plaintiff in ejectment alleged legal title in himself, and introduced in evidence a deed absolute on its face, as well as an unrecorded contemporaneous instrument purporting to be a contract of purchase and sale whereby the real estate involved was to be conveyed to defendant upon his performance of the conditions therein recited, and there was no evidence to show that the deed to plaintiff together with such contemporaneous instrument constituted a mortgage, it was error for the trial court to limit the probative scope of a subsequent writing, whereby defendant surrendered all rights under such contemporaneous instrument, to consideration merely upon the question of plaintiff's right to possession and not upon the question of title; and, even on the assumption that plaintiff's deed was in fact a mortgage and the contemporaneous instrument a defeasance, the ruling of the court can not be

sustained, since, there being no showing to the contrary, it must be presumed that the subsequent surrender of defendant's rights under the defeasance was *bona fide* and sufficient to preclude defendant from equitable relief on the theory of "once a mortgage always a mortgage". pp. 68, 72, 78.

3. MORTGAGES.—*Nature and Effect.*—A mortgage is but a lien on land as security for a debt, and the legal title remains in the mortgagor subject to the lien of the mortgage. p. 71.

4. CONTRACTS.—*Cancellation of Instrument of Defeasance.—Conveyances.*—An agreement for the cancellation of an instrument that was executed contemporaneously with a deed of conveyance and provided for a reconveyance to grantor on his performance of certain conditions, is not a conveyance within the meaning of §3957 Burns 1914, §2926 R. S. 1881. p. 71.

5. APPEAL.—*Review.—Theory of Case.*—While the court on appeal will hold a party to the theory of the case adopted in the trial court, such theory will be determined by a consideration of the whole record, hence the mere designation by appellant's counsel of an instrument as a "defeasance" at the time of offering it in evidence was not of controlling importance on the question of theory, in view of the whole record which indicated that it was a conditional contract for the sale of real estate. p. 77.

From White Circuit Court; *Charles W. Hanley,* Special Judge.

Action by Charles J. Raub against Thomas Lemon and another. From a judgment for defendants, the plaintiff appeals. *Reversed.*

*Palmer & Carr,* for appellant.
*Sills & Sills,* for appellees.

HOTTEL, C. J.—The appellant filed a complaint in the court below in which he alleges that he is the owner of the fee simple title, and entitled to the immediate possession, of certain real estate in White County, and that the defendants and each of them unlawfully hold possession thereof to his damage. Prayer for possession and damages for detention. The defendants answered by general denial. There was a trial by the court and both parties requested a special finding of facts and conclusions of law thereon.

The finding of facts and conclusions of law were in appellant's favor. Appellees filed a motion for a new trial for cause which was overruled. Judgment was then entered in appellant's favor, adjudging that he was the owner of the fee simple title in such real estate and entitled to the possession thereof. A new trial as of right was granted on motion of appellees. There was then a change of judge and the cause was submitted to a jury for trial.

On the second trial of the cause the following proceedings, pertinent to the questions presented by the appeal, were had in the trial court. The appellant introduced the following documentary evidence, viz., (1) a warranty deed of date, January 22, 1907, from Jacob Fisher, *et al.*, being all the heirs of the estate of David Fisher, deceased, in which, for the recited consideration of $4,400, they conveyed and warranted to Thomas Lemon the real estate in question. (It was agreed that these grantors were the owners in fee simple of the real estate in controversy at the time of their conveyance.) (2) A deed of date of April 1, 1907, from Thomas Lemon and his wife Alice in which, for the expressed consideration of $4,400, they conveyed and warranted the fee simple title of the real estate in question to Charles J. Raub and Chalmers H. Yambert. (3) A warranty deed to an undivided one-half of the same real estate of date April 12, 1909, from Charles J. Raub, single and over twenty-one years of age, to Joseph R. Raub, consideration $1,600, subject to a $1,000 mortgage of date April 8, 1908, given by Charles J. Raub to Chalmers H. Yambert, due April 8, 1909. (4) A warranty deed to an undivided one-half of the same real estate of date March 9, 1911, from Joseph R. Raub, single and over twenty-one years of age to Charles J. Raub, consideration $1,600, subject to taxes, etc.

(5) A warranty deed to same real estate of date October 6, 1911, from Chalmers H. Yambert and his wife Alice E. to Charles J. Raub, consideration $1,000, grantee assuming taxes and assessments then a lien on said real estate, etc. (6) A contract made April 1, 1907, contemporaneous with second deed above, the provisions of which affecting the question here involved, are as follows:

"This article of agreement and contract for purchase and sale of real estate, made this 1st day of April, 1907, between Charles J. Raub, and Chalmers H. Yambert, party of the first part and Thomas Lemon, party of the second part, Witnesseth, that if the party of the second part shall first make the payments and perform the covenants, and do the acts hereinafter mentioned, on his part to be made, performed and done the said party of the first part hereby agrees to convey to the said party of the second part, in fee simple, clear of all incumbrances whatsoever, by a good and sufficient warranty deed the following described real estate, in White County, in the State of Indiana, to wit, (here follows description substantially as that in the deeds heretofore indicated). It is hereby further stipulated between the parties, for the considerations named herein, passing between the parties, that when said conveyance shall be so made by said party of the first part the said party of the second part shall accept said conveyance, subject to payment by the said party of the second part of all unpaid taxes thereon at the time of such conveyance, including all taxes upon said real estate that may have been paid by the party of the first part at any time, after this date and prior to such conveyance and including also all assessments for drains, highways, or other special assessments, that may at the time fixed for such conveyance be a lien upon said real estate, all of which the said party of the sec-

ond part assumes and agrees to pay when they shall become due. As a consideration passing from the said party of the second part to the said party of the first part, for such conveyance of real estate, said party of the second part agrees to pay the said party of the first part the sum of $5,100, of which the sum of $1,000 shall be due and payable on or before the first day of October, 1907, and $4,100 shall be due and payable on or before the first day of April, 1908, with interest at the rate of six per cent per annum, upon all of said purchase price, the interest on $2,000 of said sum to be payable semi-annually and the interest upon the balance of said sum to be paid when the said principal sum shall become due, to wit, on April 1, 1908. Whenever any amount of said consideration shall be paid, prior to said April 1, 1908, then in that case interest shall cease upon the amount so paid. Said sum so agreed to be paid by the party of the second part to the party of the first part shall be payable without relief from valuation or appraisement laws, and with attorney fees, and it is further agreed by and between the said first and second parties that said sum so to be paid, in whole and in part shall be in the following manner, to wit, said party of the second part is to have immediate possession of said real estate with the right to clear said land and to cut all the timber therefrom and to saw and manufacture the same into lumber and timber products, but the proceeds of said timber, when so cut and marketed by the said party of the second part is to be paid, without deduction of any kind for expenses of cutting, sawing or manufacturing or otherwise, to the said party of the first part, as a part of the consideration above herein fixed for the purchase of said land. The said party of the second part is not himself to receive any part of the proceeds of said timber or lumber so sawed and manufactured from said timber but it is here agreed by and between all of the parties hereto

that Fred Dahling, now cashier of the Bank of Reynolds, at Reynolds, Indiana, shall be the collecting agent who shall receive from purchasers to whom any of the products of said timber and lumber shall have been sold, the consideration therefor, and he, the said Fred Dahling, or his successor, if his successor shall at any time be selected, is authorized to immediately pay over all such proceeds to be received by him to the said party of the first part, and the said party of the first part shall credit all such payments when so made as payments upon the consideration hereinabove fixed to be paid by the said party of the second part. to the said party of the first part, first upon any interest that may be due upon said consideration, and next to be applied upon said principal sums, and said Fred Dahling shall note such payments, when made, upon a copy of this contract which shall be held by him. * * * In case the said party of the second part shall do and perform all the acts and make the payments agreed herein to be done, performed, and made by him, within the time provided for in this agreement, then the said parties of the first part, their heirs and assigns, shall convey the said land to the said party of the second part, his heirs and assigns as provided above herein, and in case of failure of the said party of the second part to make the payments, and do and perform the acts agreed herein to be made, done and performed, then in that case the said party of the second part shall forfeit his right to receive a conveyance of said real estate, and shall surrender, immediately upon any such failure the possession of said real estate together with the timber and manufactured products of such timber then upon said real estate, together with all the products of said timber remaining unsold except the said party of the second part may have the right to retain the possession of such wood as may have been cut from tops, as provided

heretofore in this agreement, and in case of such failure of the party of the second part said party of the second part shall forfeit all payments made by him on this contract and such payments shall be retained by said parties of the first part in full satisfaction and liquidation of all damages by them and the said parties of the first part shall have the right to reënter upon and take possession of said real estate without notice.   *   *   *   ."

(7) The appellant then offered in evidence the following writing:

"This contract entered into this 18th day of April, 1908, by and between Charles J. Raub and Chalmers H. Yambert parties of the first part, and Thomas Lemon party of the second part—Witnesseth:   That to settle all matters pertaining to forfeiture of contract of purchase entered into April 1, 1907, by and between Raub and Yambert and said Lemon, and in adjustment of all matters, it is mutually agreed that said (1) contract of April 1, 1907, shall be regarded as cancelled and forfeited and all money paid be regarded as rent.   (2) That said Lemon releases all rights under said April 1, 1907, contract, and said Raub and Yambert release said Lemon from the obligations of said contract.   (3) That title to said real estate shall be regarded as absolute in said Raub and Yambert.   (4) Two-sevenths of the money derived from the sale of railroad ties now located along the side of the 'Y' railroad siding at Reynolds, Indiana, shall go to said Raub and Yambert and the money derived from the five-sevenths (5-7) interest of Thomas Lemon in said ties shall go to Fred Dahling. Fred Dahling of Reynolds, Indiana, shall be constituted as the agent of said Raub and Yambert and the said Lemon to sell said ties and collect money from same and distribute the money as heretofore agreed upon less his ex-

penses for same. (5) All of said buildings' upon said tract of land owned by Raub and Yambert, shall become the absolute property of said Raub and Yambert. (6) That all ties, lumber and sawlogs now cut from the trees on said land shall be the absolute property of said Raub and Yambert, except said Lemon shall have all the trees now cut down on said land that is not cut into logs, ties or lumber together with the firewood now cut. Said Lemon is to remove sawmill and all the personal property owned by him by November 1, 1908, otherwise title to said personal property on said land shall become the absolute property of said Raub and Yambert, and full and absolute possession shall be given said Raub and Yambert by November 1, 1908. Said Lemon is to burn the brush made by him. Said Raub and Yambert have full power and authority over said premises, and said Lemon has absolute authority to work up said material, as above described but he will in no wise interfere with said Raub and Yambert to assert their rights in having their trees' or timber worked up into lumber, or to make improvements."

The appellee objected to the admission of this writing, and the court in admitting it, limited the purpose for which it might be considered as follows: "The court now overrules the objection and admits the paper in evidence as being evidence bearing upon the right of possession and the court sustains the objection in so far as the paper is offered as tending to show title. The court being of the opinion that the deed and contract executed on the 1st day of April, 1907, being a mortgage and the offer of the paper, the character and wording of the paper being such as to confirm the court in that belief and these being the reasons for the court's ruling in this manner." To this statement and limitation placed on the probative force and effect of such evidence the appellant at the time excepted.

A written demand for possession, signed by Charles J. Raub and Chalmers H. Yambert of date February 6, 1909, was also given in evidence. All the deeds above referred to were recorded, but the other instruments, so far as the evidence discloses, were not recorded. There was also evidence of a verbal demand for possession made by appellant and a refusal by appellees to deliver up possession. There was some other evidence, but for the purposes of the questions presented by the appeal it is not necessary that it be indicated.

At the close of appellant's evidence the court instructed the jury as follows: "The court instructs you that in the complaint in this case it is alleged that the plaintiff is the owner in fee simple of the real estate therein described. I instruct you that the plaintiff has not introduced any evidence which tends to show a legal title in him but merely an equitable title and I instruct you to find a verdict for the defendants." Pursuant to this instruction the jury returned a verdict for appellees. Appellant filed a motion for new trial and assigned among other grounds that of the ruling of the court in limiting the force and effect of said writing as above indicated, and the action of the court in giving said instruction. These grounds of his motion are relied on for reversal. As affecting the questions thus presented appellant, in effect, concedes that,

1. in his complaint, he alleged a legal title to the real estate in controversy; that he is bound by such averment, and was not entitled to recover on proof of an equitable title. *Stout* v. *McPheeters* (1882), 84 Ind. 585; *Groves* v. *Marks* (1869), 32 Ind. 319; *Coppock* v. *Austin* (1904), 34 Ind. App. 319, 72 N. E. 654; *Johnson* v. *Pontius* (1889), 118 Ind. 270, 20 N. E. 702. Appellant

2.

insists, however, in effect, that he offered in evidence a deed from appellees which was absolute on its face and which conveyed and vested in the grantee therein, the fee simple title to the real estate in question, and that the other evidence given in the case did not change the character of such title, or, at least, that under all the evidence introduced in the case, the question whether appellant had proven a fee simple title to such real estate was one of fact for the jury, to be determined by it under proper instructions as to the law applicable to the facts, and hence that the court erred in giving the peremptory instruction, above indicated. Appellees on the other hand insist, in effect, that said deed, from Lemon, though absolute on its face, was in fact a mortgage, that such deed should be construed with the contemporaneous agreement, and when so construed the question whether the two together constituted a mortgage was a question of law for the court, and that the court properly held that such instruments in fact constituted a mortgage; that being once a mortgage they always remained a mortgage and could not be changed by an after agreement cancelling the agreement made contemporaneous with the deed, and hence that appellant's title to said real estate was only equitable, and that the peremptory instruction of the trial court was proper. All the questions here suggested and involved are, we think, discussed and settled in the cases of *Wilson* v. *Carpenter* (1878), 62 Ind. 495, and *Ferguson* v. *Boyd* (1907), 169 Ind. 537, 81 N. E. 71, 82 N. E. 1064. In the former case the appellee, who was defendant below, filed a first paragraph of answer which set up facts very similar to the facts involved in the instant case, except that the averments of such answer gave much stronger support to appellant's contention in

that case than do the facts of the instant case give to appellees' contention here. The answer in that case asked affirmative relief, and after holding it sufficient as an answer the court then said that it had been treated as a counterclaim in the court below and proceeded to consider it from such standpoint. That appellant's contention in that case was the same as appellees' contention in the instant case will appear from the court's statement of the contention of the parties in that case which we quote from page 500: "It is very earnestly contended by the appellant [by appellees here], that the alleged surrender and cancellation of the defeasance, set up in the paragraph under consideration, did not in any manner divest the original contract between the parties of its mortgage character, and hence constituted no defense to his complaint, and that, for still stronger reasons, such surrender and cancellation did not make out a case for the *affirmative relief demanded in that paragraph.* Many of the authorities cited by him lay down abstract rules which would seem to support the positions thus assumed. But the appellee insists, that the surrender and cancellation of the defeasance, averred by him, constituted a new and binding contract between the parties, which superseded the original agreement, and which practically converted the deed from the appellant to him into an absolute conveyance in fee-simple." (Our italics.) So in that case, it was insisted by the appellant as it is insisted by appellees in this case, "that the deed and defeasance taken together constituted a mortgage," and that such deed being once a mortgage it always remained a mortgage. The court in that case on pages 500 and 501 disposed of these respective contentions as follows: "That the deed and defeasance, taken together, constituted only a mortgage from the

appellant to the appellee, is a proposition too well established to require the citation of authorities to sustain it. As to that there is no controversy between the parties here. But what effect, if any, did the surrender of the defeasance, for cancellation have on the original agreement between the parties, conceding it to have been surrendered in the manner and under the circumstances alleged by the appellee? In 2 Washburn, Real Property, p. 62, 4th ed., it is said: 'The doctrine universally applicable is, if once a mortgage, always a mortgage. Nor can it be made otherwise by any agreement of the parties made at the time of the execution of the deed, nor upon any contingency whatever. Equity will not admit of a mortgagor embarrassing or defeating his right to redeem the estate by any agreement which he may be induced to enter into in order to effect a loan. *This does not preclude any subsequent bona fide agreement in respect to the estate between the parties; and where a mortgagor voluntarily cancelled the instrument of defeasance which he held, it gave to the deed which it was intended to defeat the effect of an original absolute conveyance as between the parties.*' " (Our italics.) Speaking further with reference to the maxim "once a mortgage always a mortgage" in that case the court on page 502 said: " 'it can not interfere with the right to foreclose, when the mortgage has become forfeited, *nor with any fresh contract which the mortgagor may choose to make with the mortgagee for a sale or relinquishment of the equity of redemption and the vesting the latter with an irredeemable estate.*' In Hillard on Real Property, p. 546, 4th ed., it is also said: 'Where a deed is given, accompanied by a defeasance, which is not recorded, *a subsequent surrender and cancelling of such defeasance, by agreement, for the purpose of giving the grantee an absolute title, without unfairness between the parties*

*or as to strangers, and before any rights of creditors have intervened, will vest the absolute title in the grantee.'* * * * After a careful review of the foregoing authorities, and of many others which we deem it unnecessary to specifically refer to here, we are of the opinion, that the surrender of the defeasance for cancellation, under the circumstances as alleged, *vested in the appellee an absolute title to and ownership in the lands in suit."* (Our italics.)

As stated above the facts in the instant case are much stronger in appellant's favor than the facts presented by the answer in the case just quoted from. This is so because the averments in said answer clearly showed that the deed and so-called defeasance in that case constituted a mortgage in fact, while in the instant case the contemporaneous agreement purports upon its face to be an agreement of purchase and sale of the real estate involved, and an agreement on the part of the appellant and his cograntee named in the deed to convey to appellee Lemon such real estate upon his payment of the consideration named in such agreement according to the terms and provisions therein contained.

It is true, as appellees contend, that "the modern doctrine—settled in this State—is, that a mortgage is but a lien on the land as a security for the debt, and the legal title remains in the mortgagor, subject to the lien of the mortgage." *Fletcher* v. *Holmes* (1870), 32 Ind. 497, 513. See, also, *Francis* v. *Porter* (1855), 7 Ind. 213; *Morton* v. *Noble* (1864), 22 Ind. 160; *Grable* v. *McCulloh* (1867), 27 Ind. 472; *Landers* v. *Beck* (1883), 92 Ind. 49, 51; §3957 Burns 1914, §2926 R. S. 1881. It is also true that the agreement to cancel the so-called defeasance was not a conveyance within the meaning of §3957, *supra.* Such concession, however, does not, as appellees seem to

think, dispose of the question here involved. Appellees seem to overlook the fact that appellant

2. offered in evidence a deed absolute on its face. This deed showed the legal title to be in appellant. It is true that the so-called defeasance was also offered in evidence, but this instrument was cancelled, and if the law be correctly stated in the case of *Wilson* v. *Carpenter, supra,* such cancellation, if *bona fide,* and for the purposes of the question under consideration such cancellation must be so treated, it gave the deed which it was intended to defeat *"the effect of an original absolute conveyance as between the parties"* and vested "the absolute title in the grantee."

If, however, it should be conceded, as appellees in effect contend that where a deed, absolute on its face, is accompanied by a defeasance that such deed is rendered a mortgage, and that the cancellation of such defeasance could not change the original transaction and restore to the deed the *prima facie* effect of which it was robbed by such defeasance, their contention still remains subject to the infirmity that they assume that the agreement executed contemporaneous with the deed is a defeasance when in fact it is not a defeasance. On the contrary, it purports to be an agreement of purchase and sale of the real estate involved, and, in effect, binds the appellant and his cograntee to convey to appellee Thomas Lemon such real estate upon the full payment of the consideration therein expressed according to the terms and conditions therein provided. That the parties themselves treated and regarded such agreement between them as one of purchase and sale of the real estate in question and not as a defeasance is further evidenced by the language in the instrument of cancellation to the effect that the latter instrument was entered into for the follow-

ing purpose, viz., (we quote) "To settle all matters *pertaining to forfeiture of contract of purchase* entered into April 1, 1907." In speaking of an instrument similar to that here involved, but more favorable to appellee's contention, the Supreme Court in the case of *Ferguson* v. *Boyd, supra,* 542, 543, said: "The deed to Boyd was absolute, and the collateral instrument contained no provision making it void upon the performance of a condition. On the contrary, the provision of the latter instrument was that upon repayment the grantee would reconvey. *This did not constitute a technical defeasance,* although it was, no doubt, sufficient to secure to the grantor an equitable right of redemption. Blackstone says: 'A defeasance is a collateral deed, made at the same time with a feoffment or other conveyance, containing certain conditions, upon the performance of which the estate then created may be defeated or totally undone.' * * * There is little, if any, dissent from the proposition that in such a case as this the grantee has a legal estate." See, also, *Watkins* v. *Gregory* (1841), 6 Blackf. 113; *Flagg* v. *Mann* (1837), 2 Summ. 486, Fed. Cas. No. 4,847; *Baird* v. *Kirtland* (1837), 8 Ohio *21; *Loring* v. *Melendy* (1842), 11 Ohio 355; *Kemper* v. *Campbell* (1886), 44 Ohio St. 210, 6 N. E. 566; *Knowles* v. *Knowles* (1903), 25 R. I. 464, 56 Atl. 775; *McCarthy* v. *McCarthy* (1869), 36 Conn. 177; *Williams* v. *Baker* (1901), 62 N. J. Eq. 563, 51 Atl. 201; *Fitch* v. *Miller* (1902), 200 Ill. 170, 65 N. E. 650; *Gallagher* v. *Giddings* (1891), 33 Neb. 222, 49 N. W. 1126; *Stall* v. *Jones* (1896), 47 Neb. 706, 66 N. W. 653; *First Nat. Bank* v. *Tighe* (1896), 49 Neb. 299, 68 N. W. 490; *Hughes* v. *Davis* (1870) 40 Cal. 117; *Marshall* v. *Williams* (1891), 21 Or. 268, 28 Pac. 137; 1 Blackstone, Comm. (Sharswood) 646 note; and see *Wilson* v. *Carpenter, supra.* The same case quotes

with approval the following language of Justice
Story, in the case of *Flagg* v. *Mann, supra,* 541,
"The present bond does not declare, that, if the con-
dition is complied with the conveyance shall be
utterly void. On .the contrary, it is to remain in
full validity, and a reconveyance of the title is to be
made, which necessarily supposes, that, *until the
reconveyance, the estate remains at law in the grantees.*"
(Our italics.) In the case of *Kemper* v. *Campbell,
supra,* where a deed absolute in form was intended as
a security the court used the following language
which is also quoted with approval by the Supreme
Court in the case of *Ferguson* v. *Boyd, supra:*
"It is not a proper mortgage. In equity it is con-
strued to be such for the· purpose of. preventing
imposition and injustice; *but at law it is simply
what, on its face it purports to be, an absolute con-
veyance in fee simple. Hughes* v. *Davis* (1870), 40
Cal. 117; 1 Jones, Mortgages (6th ed.) §339. *And
no other or different construction will be placed on the
deed, unless necessary to accomplish the ends of jus-
tice.* 1 Jones, Mortgages (6th ed.) §321. To do
otherwise would be foreign to the spirit of equity, and
would violate the plainest principles upon which
equity jurisprudence has always been administered
by the courts. No one of the maxims of equity is of
more unvarying application than that 'he who seeks
equity must do equity.'" (Our italics.) To the
same effect, see, *West* v. *Reed* (1870), 55 Ill. 242;
*Hassam* v. *Barrett* (1874), 115 Mass. 256; *Marshall*
v. *Williams, supra; Carpenter* v. *Carpenter* (1873),
70 Ill. 457; *Fitch* v. *Miller, supra; Baird* v. *Kirt-
land, supra.*

Appellees insist, in effect, that the cases, *supra,*
are distinguishable from the instant case because
equitable relief was asked and involved in those
cases, whereas, in the instant case appellant bases

his action on a legal title. This distinction does not render the general propositions of law, announced in those cases and quoted and italicized, above, inapplicable to the instant case. It must be remembered that in the case at bar it is the appellees and not the appellant who must appeal to the equitable side of the court for relief. Appellant has a recorded deed which shows a fee simple title absolute in him and if this title can be changed or shown to be different from what it appears it must be by resort to equity. It was, therefore, the appellees, who were required to invoke the equity side of the court to change the character of the title, and when they ask the assistance of such a court they are confronted with their own voluntary good-faith cancellation and surrender of the instrument on which they must base their right to change such title, and a court of equity, which requires all persons who invoke its aid to come into court with clean hands, will not permit a party to ask and obtain the advantages of an instrument which he, in good faith has cancelled. In such a case if the cancellation of the instrument which made the deed a mortgage was voluntarily given, and in no way influenced by fraud or mistake of the parties, and no rights of third parties have intervened a court of equity will leave the title where it finds it, or, in other words, it will adopt that construction and effect which the parties themselves have voluntarily given to their transactions, and hence leave the legal title to the lands involved in the hands of the grantee of the deed which was sought to be declared a mortgage.

It is also insisted by appellees that the case of *Ferguson v. Boyd, supra,* is to some extent modified or distinguished in the case of *Sinclair* v. *Gunzenhauser* (1913), 179 Ind. 78, 98 N. E. 37, 53, 100 N. E. 376, and that the instant case is controlled by

the latter case. Appellees' contention is based on the following language used by the court in the latter case: "*Ferguson* v. *Boyd, supra,* is based upon consideration of equitable defenses, in the course of the presentation of which, attention is directed to the distinction between defeasances in collateral agreements which operate to defeat a title which has vested and agreements to reconvey, though in each the grantee has the legal title, and it is there said, dealing with the question of title, quoting from 1 Jones, Mortgages (6th ed.) §244. 'An absolute deed with a defeasance passes the legal title to the property even in states in which it is held that a mortgage in the usual form does not pass the title.' But it is clear that that rule does not obtain in this State, besides, in the same section, it is also said: 'At law, an absolute deed and a separate absolute defeasance or agreement to reconvey, executed at the same time, as security for a debt, amount to a mortgage.' And such is the prevailing rule. See note 15, §244, *supra.* Nor is it material that the defeasance be separate." If it can be said that this latter case in any way criticises or places any limitation on the language used by the court in the former case, it affects only what might be construed as an implied approval by the former case of the rule indicated in the quotation as the rule laid down by Jones on Mortgages, the court in the latter case saying that, "such rule does not obtain in this State." This limitation can afford appellees no relief in the instant case. The agreement in question does not purport to be a defeasance, nor is there anything appearing on the face of either the deed or the agreement standing alone, from which the court can say as a matter of law that the deed was in fact given to secure a debt, nor was there any other evidence introduced in the instant case necessitating

such an inference. In such respect the instant case is much stronger than either of the cases quoted from, *supra.*

It should be stated in this connection that appellees contend that appellant, in the trial of the cause, treated the agreement executed contemporaneous with the deed as a defeasance, and

5. that this court should hold him to the theory of the case adopted in the trial court. This contention of appellees is based on the statement made by appellant at the time he offered such agreement in evidence which statement is as follows: "We offer this contract as evidence of the fact that by its execution and delivery, which delivery we offer to prove, the first contract marked exhibit 'A' and introduced in evidence in this cause, the same being a defeasance executed concurrently with the deed in evidence from the defendants in this action to Raub and Yambert, was by this contract now offered in evidence cancelled and set aside and that by operation of this contract now offered in evidence, the deed from Lemon and wife to Raub and Yambert became an absolute deed and conveyance to Raub and Yambert, by virtue of which said Raub and Yambert took absolute title to the real estate described in the complaint." It is true, generally speaking, this court will hold a party to the theory of a case adopted in the trial court where such theory clearly appears from the record. *Southern R. Co.* v. *Crone* (1912), 51 Ind. App. 300, 99 N. E. 762; *Muncie, etc., Traction Co.* v. *Citizens Gas, etc., Co.* (1913), 179 Ind. 322, 100 N. E. 65. This court, however, will look to the entire record to ascertain the theory on which a case was tried below. The mere fact that appellant in identifying the instrument offered in evidence referred to it as a "*defeasance*" is not of controlling importance within the

meaning of the rule invoked by appellees. It follows we think that this case, as presented

2. by this appeal, is controlled by the cases of Wilson v. Carpenter' and Ferguson v. Boyd, supra, and that, under them, the court erred in limiting the effect of said instrument of cancellation of the so-called defeasance and in giving the peremptory instruction in favor of appellees.

Before closing the opinion we deem it proper to say that it must not be understood from anything said herein that this court has foreclosed the question of the character of appellant's title, or the question of the effect of the cancellation of the so-called instrument of defeasance. It may be that, from the entire evidence in the case a court or jury might finally determine, and properly so, that the deed and contemporaneous agreement here involved were in fact executed to secure a loan obtained by appellees, and that such deed, though absolute on its face, is, in fact, a mortgage and that the agreement of cancellation herein referred to was tainted with fraud or some other infirmity which might render it of no effect and hence that appellant's title is in fact an equitable title. This appeal presents no such question and it was for the purposes of the questions presented by the appeal only that we treated the deed and so-called defeasance as being what they purport to be, and treated the cancellation of such defeasance as being fairly procured and voluntarily made in good faith.

The judgment below is reversed with instructions to the trial court to sustain appellant's motion for new trial, and with leave to appellant to file additional paragraphs of complaint, if he so desires, and for any other proceedings not inconsistent with this opinion.

NOTE.—Reported in 108 N. E. 631. As to the rule that the plain-

tiff in ejectment must be entitled to the possession, see 116 Am. St. 569. On a deed as a mortgage, see L. R. A. 1916 B 18.° See, also, under (1) 15 Cyc 115; (3) 27 Cyc 961; (5) 3 C. J. 718; 2 Cyc 670.