## Solomon P. Swisher v. Charles J. Palmer et al.

1. CONVEYANCES—*To What Extent the Recording of a Deed is Evi-
dence of Delivery and  Acceptance.*—The recording of a deed is evi-
dence of delivery and acceptance only so far as relates to the passing of
title, and does not apply to a deed which imposes an obligation of the
grantee to assume the payment of a pre-existing incumbrance upon the
property.

2. SAME—*Grantee Must Assent to the Clause Creating Personal
Liability to Pay an Incumbrance.*—The mere fact of the execution and
acknowledgment of a deed for land by a mortgagor with a clause
therein that the grantee should pay the mortgage indebtedness, and its
being recorded, is not sufficient to create a personal liability on the part
of the grantee to pay such indebtedness. To bind him it must be
alleged and proved that he assented to such clause. Such assent is
given only when the deed is delivered by the grantor and accepted by
the grantee.

3. SAME—*Delivery May be Made to Agent—Ratification.*—Delivery
of a deed may be made to a third person for the grantee and such deliv-
ery is delivery to the grantee if he afterward assents to it.  Acceptance
may be shown by ratification.

4. PRINCIPAL AND AGENT—*Limitation of Agent's Authority.*—The limitation of the authority of an agent is of importance only so far as it is apparent to a responsible public.

5. SAME—*Secret Instructions.*—Secret instructions to an agent do not bind innocent third persons dealing with the agent.

6. RATIFICATION—*With Knowledge of Ignorance of Essential Facts.*—Where the principal rectifies the act of his agent, knowing that he is ignorant of essential facts, he assumes the risk with knowledge of his ignorance.

7. SAME—*Must Be in Toto.*—A ratification must be *in toto.* Justice does not permit a man to accept a part that is beneficial and reject the part that is burdensome.

Bill to Foreclose a Mortgage.—Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge presiding. Heard in this court at the May term, 1902. Affirmed. Opinion filed November 1, 1902.

FRED DRAPER and G. W. SALMANS, attorneys for appellant.

O. A. McFARLAND and PENWELL & LINDLEY, attorneys for appellees.

MR. JUSTICE HARKER delivered the opinion of the court.

This is a bill to foreclose a mortgage on certain real estate situated in the city of Danville, executed by A. L. Webster and wife, to secure the payment of $6,000, borrowed by Webster from appellees, Palmer and Wells, as trustees. The mortgage bears date February 1, 1896, and the note for the $6,000 was made payable in five years, with seven per cent interest. On August 31, 1897, Webster and wife conveyed the real estate to E. B. Willison, the deed reciting that the grantee assumed and agreed to pay the mortgage. On October 5, 1899, Willison and wife conveyed the premises to Solomon P. Swisher, there being a clause in the deed that Swisher agreed to pay the mortgage. On December 7, 1899, Swisher executed a quit-claim deed to one Lanham, and Lanham conveyed to C. C. Maxon. The deed to Maxon contained the clause that Maxon agreed to pay the mortgage. There was a prayer in the bill that in the event of the property selling for a sum insufficient to pay the mortgage debt, there should be a personal decree

and execution for the deficiency against Maxon, Willison and Swisher. Swisher filed an answer denying his personal liability. Willison filed an answer confessing his personal liability and also filed a cross-bill seeking to make Swisher primarily liable for the deficiency as between Swisher and Willison. Swisher filed an answer to the cross-bill denying his personal and primary liability to Willison. By agreement, a decree of foreclosure was rendered and the question of liability for deficiency was deferred for future adjudication. The property was sold, and there was a deficiency of $1,197.96. The cause was referred to the master in chancery to take evidence on the deficiency question and report conclusions of law and fact. The master took evidence and submitted conclusions of law and fact, holding, among other things, that Swisher assumed payment of the mortgage debt and was personally liable with Willison for the deficiency. Exceptions to the master's report were filed, which were overruled, and a decree rendered holding Willison and Swisher both liable for the deficiency, but Swisher primarily liable. Swisher excepted to the action of the court and prosecuted this appeal.

The evidence taken before the master shows that Willison, after holding the property about two years, desired to dispose of it. W. Y. Jackman, a real estate agent, who had negotiated the sale of the property from Webster to Willison, found a purchaser in one L. Roy Lanham, and went to Willison and informed him that one S. P. Swisher would take the property and assume the mortgage. Willison said he would make the deed if Swisher was financially responsible. Jackman then went to Swisher and told him that he was selling the place for Willison, but that the purchaser wasn't ready to take it. He asked Swisher to allow the deed to be made to him. He informed Swisher that there was a $6,000 mortgage upon the property, but that the conveyance would be made subject to the mortgage. Swisher replied that the deed might be made to him to pass title to some one else, provided that he was not made

responsible for the mortgage debt. An attorney informed Swisher that a deed made "subject to a mortgage" only, would not make the grantee personally responsible. Willison then, on October 5, 1899, went with Jackman to the office of Jackman's attorney and there executed his deed to S. P. Swisher containing the clause "Grantee assumes and agrees to pay the mortgage," as consideration for the deed, after being informed that the clause would bind grantee personally to pay the debt. Swisher was not present. Willison then left the deed with Lindley, the attorney of Jackman, and it was, without the knowledge of Swisher, placed of record. Jackman informed Swisher that the deed had been made to him. Swisher did not enter into possession or regard himself as the purchaser, but a mere conduit for the title to pass to another party. He was ignorant of the clause in the deed making him personally responsible for the mortgage debt and in fact never saw the deed. But before he executed the deed to Lanham, a demand was made upon him for the payment of interest. He denied his liability. Willison then saw him, told him he was to pay the interest and that he had better get counsel. After that he made the quit-claim deed to Lanham. Shortly after doing so, he discovered that the deed from Willison to him was of record, and that he was by it made personally responsible for the mortgage debt.

Willison admits his personal liability, but seeks to invoke the rule that a successive grantee of real estate who assumes the payment of an incumbrance upon the same becomes an original promisor for its payment, and the prior purchaser becomes merely a surety. Flagg v. Geltmacher, 98 Ill. 293.

Swisher is primarily liable if he assented to the clause in the deed from Willison to him above referred to. Such assent is given only when the deed is delivered by the grantor and accepted by the grantee. The recording of a deed is evidence of delivery and acceptance only so far as relates to the passing of title and does not apply to a deed which imposes an obligation of the grantee to assume the

payment of a pre-existing incumbrance upon the property.
Thompson v. Dearborn, 107 Ill. 87. The law hesitates to
fasten the presumption of acceptance of a personal obligation
upon such slight evidence. But delivery may be made to a
third person and acceptance may be shown by ratification.
For whom was Jackman acting in this transaction? Evi-
dently for himself. But whose agent can he be said to
have been? Much depends upon a determination of this
question of fact. If he can be said to have been Willison's
agent, then notice to Jackman of Swisher's refusal to
become personally responsible for this mortgage debt was
notice to Willison, and Willison could not, in good faith,
have made such a deed to Swisher. Willison attended to
every particular act in this transaction personally. He had
no representative in any capacity. He, himself, inquired
concerning the credit of Swisher, and the legal effect of
the clause above referred to. His connection with Jack-
man was a mere consent to trade with Jackman's man pro-
vided that man was financially responsible. It is conceded
that both Swisher and Willison have acted in entire good
faith throughout this whole transaction. Consequently the
capacity in which Willison considered Jackman to be serv-
ing is of importance in determining this question. Willi-
son evidently did not regard Jackman as his own agent
because he relied upon him for nothing and allowed him to
do nothing for him. On the other hand, he constantly
looked upon Jackman as the agent of Swisher. Is it rea-
sonable to suppose that Willison would have entered upon
this transaction and pursued it to completion without ever
seeing Swisher, had he not believed he was dealing with
Swisher's agent? He delivered the deed to Jackman and
surrendered all control over the property. As a matter of
fact Swisher did authorize Jackman to have a deed made out
to him, and constituted Jackman his agent to that extent.
The limitation of that authority is of importance only so
far as it is apparent to a reasonable public. But it is con-
tended that Jackman was, at most, only the special agent
of Swisher, and that Willison dealt with him at his peril.

This limitation is in the nature of a secret instruction, and secret instructions do not bind innocent third persons dealing with the agent. Swisher held Jackman out as having authority to have Willison make a deed to him, Swisher, and it was most certainly the duty of Swisher to see that the authority, which made it possible for the agent to perpetrate a fraud, was not violated.

A delivery of a deed to a third person for the grantee is delivery to the grantee if he afterward assents to it. Kingsbury v. Burnside, 58 Ill. 310. Soon after the deed was made out, Jackman informed Swisher of that fact. Swisher made no effort to see the deed, but relied solely upon the representation of Jackman as to what it would be. About a month afterward, Palmer sought Swisher and requested the interest on the mortgage debt. Swisher denied his liability. This should have been sufficient to put him on inquiry. Then Willison came to Swisher and demanded the interest. Swisher, still certain, informed him that he was not responsible. Willison told him he had better consult counsel. Still he refused to investigate, and, making no effort whatever to ascertain his liability or see the deed, on the 7th of December, 1899, executed his quit-claim deed to Lanham. Had he taken the trouble to investigate the work of Jackman, he would have discovered the fraud and the law would have permitted him to repudiate the conveyance and place Willison *in statu quo*.

By Swisher's execution of the quit-claim deed, he assented to the provisions of Willison's deed and ratified the acts of his unauthorized agent. While the general rule is that a ratification to be binding must be made with a knowledge of all material facts affecting the acceptance of an unauthorized agent, and also that upon the discovery of his mistake in the material facts, not caused by his neglect, the principal may avoid such ratification, still, if the principal chooses to ratify, knowing that, he is ignorant of essential facts, he assumes the risk with knowledge of his ignorance. Campbell v. Millar, 84 Ill. App. 217; Kelley v. Newburyport Horse R. R. Co., 141 Mass. 496; Huffcut on Agency, Sec.

37. Where one deliberately shuts his eyes to means of information which he can easily acquire and ratifies an act deliberately, having had all the knowledge in respect to it which he cares to have, then such ratification is binding upon him. 2 Am. and Eng. Ency. of Law, 2d Ed., p. 1190; Campbell v. Millar, 84 Ill. App. 217. Ignorance which is intentional and deliberate will not defeat a ratification. Reviewing Swisher's actions in this transaction, his culpable neglect after being repeatedly warned, we can not do less than find that he "had all the knowledge in respect to it which he cared to have." The fact that Swisher would never have ratified had he seen the deed, or that he may have had express intent not to ratify, does not prevent a ratification. Mechem on Agency, Sec. 146.

The only remaining question is, did the mere execution of the quit-claim deed constitute an acceptance of all the rights and obligations passing to him by his grantor's deed? Swisher must have ratified, or accepted, Willison's deed to him as far as the passing of title to himself was concerned, because a quit-claim deed presupposes a previous or precedent conveyance. Bouvier's Law Dict., Vol. 2, Rawle's Revision. And there could be no previous conveyance to him unless he ratified the acceptance of this deed by his agent. Having ratified a part of it then, the law compels him to ratify the whole. It is a cardinal rule of law that a ratification must be *in toto*. Justice does not permit a man to accept a part that is beneficial and reject the part that is burdensome.

For the reasons above stated, the opinion of this court is that the master's report and the approval of same and decree entered by the court below are correct.

Judgment affirmed.