JOHN H. FITCH et al.

v.

ROBERT MILLER et al.

*Opinion filed December 16, 1902.*

1. PARTITION—*an equitable interest is subject to partition.* An equitable interest in lands may be the subject of a bill for partition, but such interest must be a meritorious and subsisting one.

2. MORTGAGES—*mortgage arising from a deed absolute in form is an equitable mortgage.* A mortgage created by a deed absolute in form and a subsequent unsealed agreement to re-convey is an equitable mortgage, as distinguished from a legal mortgage.

3. SAME—*right to redeem is purely an equitable right.* The right of redemption growing out of a deed absolute in form and an unsealed agreement to re-convey is purely an equitable interest, and a court of equity will not protect or enforce it unless equitable considerations require it to do so.

4. SAME—*if equitable considerations prevent redemption, equity will leave legal title as it stands.* If equitable considerations prevent the enforcement of a right of redemption a court of equity will leave the legal title where it stands, without the execution of any instrument by the owners of the redemption right or without further proceedings to foreclose.

5. DEEDS—*a deed is not effective until delivered to grantee.* A deed never becomes effective to pass title until there is a delivery thereof to the grantee.

6. SAME—*deed deposited in escrow is of no effect until condition is performed.* A deed deposited in escrow is no more than a scroll until the condition is performed which makes its delivery obligatory.

7. SAME—*when deed is not valid until second delivery.* If a grantor executes a deed and delivers it to a third party to be delivered to the grantee upon the happening of some future event, it is not the grantee's deed until the second delivery.

8. SAME—*when affirmative action is not necessary to invest party with title.* The delivery of a deed absolute in form invests the grantee with the legal title, even though the transaction is converted into an equitable mortgage by the subsequent execution of an unsealed agreement to re-convey; and no affirmative action to divest the mortgagor of his right of redemption is necessary to invest the mortgagee with full legal title.

9. LIMITATIONS—*if foreclosure is barred redemption is barred.* The right to foreclose and the right to redeem are reciprocal, and if one is barred the other is also barred.

10. LACHES—*when bill by heirs is filed too late for redemption.* Delay for eight years after the youngest heir came of age, to file a bill to

remove an equitable mortgage as a cloud, which was seventeen years after the time allowed for redemption under the ancestor's contract, will be held to constitute *laches*.

11. SAME—*if laches is set up in defense, complainant should allege excuse.* If the defense of *laches* is raised by answer to a bill in equity, it devolves upon the complainant to amend his bill and allege an excuse for his *laches*.

12. SAME—*when heirs cannot plead ignorance of existence of contract.* Heirs cannot plead ignorance of the existence of a contract for redemption as an excuse for their *laches* in enforcing their rights thereunder, where their ancestor was one of the parties to the contract and signed the same, which was placed upon record a day or two after its execution.

13. SAME—*ignorance of facts which inquiry would develop is no excuse.* *Laches* in filing a bill to enforce and partition a right of redemption cannot be excused upon the ground of ignorance of the contract upon which such right was based, where any examination of records concerning certain property which complainants claimed, in a former bill, to own, would have led to the discovery of such contract and any rights they might have had thereunder.

14. SAME—*equity is not controlled by period of limitation fixed by law.* In determining whether there has been *laches* in exercising a right of redemption, a court of equity is not necessarily controlled by the period of limitation as fixed in actions at law.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

This is a petition for partition, filed by the plaintiff in error, John H. Fitch, in the circuit court of Cook county on August 21, 1897, against William Miller, the South Chicago Railroad Company, the city of Chicago, —— VanArkle, Garrie S. French, Mary A. Fitch, Timothy S. Fitch and Beatrice Fitch, the latter being three of the plaintiffs in error. The petition or bill seeks partition of the south twenty acres of the east half of the south-east quarter of section 24, township 38 north, range 14 east of the third principal meridian in Cook county, Illinois, and alleges that the petitioner below, John H. Fitch, one of the plaintiffs in error here, and Mary A. Fitch, Timothy S. Fitch and Beatrice Fitch, defendants below and the three other plaintiffs in error here, are

owners each of an undivided three thirty-seconds part of said twenty acres, and that Garrie S. French, one of the defendants below and one of the defendants in error here, was the owner of the other five-eighths or twenty thirty-seconds of said twenty acres. The bill or petition prays for a partition, subject to such alleged cloud or lien as may have existed by reason of the circumstances hereinafter stated. The bill alleges that John Fitch was the owner of said twenty acres in his lifetime, and that he died intestate at Nettleton, Kansas, on July 20, 1878, leaving him surviving, as his only children and heirs-at-law, the plaintiffs in error, John H. Fitch, Mary A. Fitch, Timothy S. Fitch and Beatrice Fitch. It is also alleged that said plaintiffs in error conveyed an undivided five-eighths of said premises to said Garrie S. French. By amendment to the bill the Illinois Central Railroad Company was made a defendant. William Miller filed an answer to the bill, denying that John Fitch owned any of said premises at the time of his death. Answers were filed by Garrie S. French and by Mary A. Fitch, Timothy S. Fitch and Beatrice Fitch, substantially admitting the allegations of the bill. William Miller, who resided in London, England, died testate on June 18, 1898, in England, and his death was suggested, and his unknown heirs and devisees were made defendants, and thereafter his executor and trustee and heirs filed an answer denying, substantially, the material allegations of the bill.

On February 13, 1900, after hearing had, the court below rendered a final decree in which, after finding that the city of Chicago had by condemnation acquired the title to a part of certain lots described in the bill, but not here in controversy, and that the South Chicago Railroad Company had acquired by condemnation the title to a certain strip of land for a right of way over a part of said premises, which had been leased to the Illinois Central Railroad Company, the court further found that the complainant below, the plaintiff in error, John H.

Fitch, had not proved the material allegations of his bill, and that the same was without equity, and dismissed the bill for want of equity. The present writ of error is prosecuted from the decree of the circuit court, so dismissing the bill.

The material facts, as set up in the pleadings and shown by the proofs, are substantially as follows:

On March 5, 1874, John Fitch was the owner of the twenty acres of ground here in controversy, and on that day executed a warranty deed, conveying said twenty acres, and also lot 156 in division 3 of the south shore subdivision of the north-east quarter of section 30 in said township 38, to William Miller of London, in the kingdom of Great Britain, in consideration of the sum of $30,000.00, which said deed was recorded in the recorder's office of Cook county on April 20, 1874. The deed was executed by Fitch to Miller in pursuance of a sale, made by Fitch to Miller of the premises therein described; and Miller paid $5000.00 in cash to Fitch, and executed a mortgage upon the twenty acres in question to secure the balance of the purchase money, to-wit, the sum of $25,000.00, evidenced by two notes, one for $10,000.00, due in thirty days, and the other for $15,000.00, due in sixty days after March 5, 1874, which said mortgage was recorded in the recorder's office of Cook county on April 23, 1874. The note for $10,000.00 was paid by Miller to Fitch, but the remaining note for $15,000.00 was not paid when it was due. In May, 1874, Fitch brought suit in assumpsit in the superior court of Cook county against Miller upon the note for $15,000.00.

On October 5, 1875, a settlement or arrangement was made between Fitch and Miller, which was reduced to writing by a written contract dated October 5, 1875, which contract, however, was not under seal, and was signed and acknowledged by John Fitch, Elizabeth W. Fitch, his wife, and by William Miller by Thomas L. Parker, his attorney in fact, which said agreement was recorded on

October 7, 1875, in said recorder's office. Upon the same day, the suit brought by Fitch against Miller upon the note for $15,000.00 was dismissed by agreement.

The contract of October 5, 1875, recites the execution of the deed of March 5, 1874, by John Fitch and wife to William Miller, conveying said twenty acres and said lot 156 for the consideration of $30,000.00, and also the execution of the mortgage securing the payment of $25,-000.00; and also recites that "it has been agreed between the said John Fitch and the widow and devisee of Timothy S. Fitch, deceased, that the entire sum of $30,000.00, the purchase money of the said land herein described, should become and be treated as a loan of money from the said Miller and as security for the re-payment thereof and interest; that said Miller should retain as security the said lands hereinbefore described, which have been conveyed to him by said John Fitch and wife as hereinbefore set forth, and, in addition thereto and as additional security for the re-payment of the said entire sum, the said John Fitch and wife have on this date executed a certain mortgage for the sum of $7500.00 to said William Miller, with interest, conveying" certain lots in certain blocks in south shore subdivision No. 5 in Cook county, "subject to prior encumbrance. And Elizabeth W. Fitch, widow and devisee of Timothy S. Fitch, as further security, has by her deed of mortgage, bearing even date herewith, conveyed to said William Miller all of" certain other blocks and lots in said south shore subdivision No. 5 "subject to prior encumbrance to Ezra B. McCagg, to secure a note of $7500.00 bearing even date herewith and payable to said William Miller in five years after date, with interest thereon at ten per cent per annum, out of property, or the proceeds thereof, received by her as devisee from the estate of Timothy S. Fitch, her husband, deceased, but not out of property acquired by her otherwise." And said contract also recited that Miller and his wife had made a certain deed to John

Fitch, as grantee, of said south twenty acres and of said lot 156, "which said deed has not been delivered, but is held in escrow in the hands of Robert Hervey of Chicago, representing said William Miller, to be delivered to said John Fitch on full payment of said sum of $30,000.00, and interest at the rate aforesaid, and at the time aforesaid and for the securing of the payment whereof the said deed is so held in escrow, and which sum is further secured by the mortgages hereinbefore described, made by the said John Fitch and wife and Elizabeth W. Fitch, respectively, on the property and for the sums, respectively, therein set forth, which mortgages are simply additional securities for the prompt and faithful payment of said sum of $30,000.00 with interest thereon." The said agreement then proceeds as follows: "Now, it is understood and agreed between the said parties and is hereby declared to be the true intent and meaning of said transaction, that, upon the full payment of the said sum of $30,000.00 and interest at ten per cent in five years from the date thereof, said interest being payable annually, the said deed, so held in escrow to said twenty acres, shall be duly delivered, and the respective mortgages executed at this date by John Fitch and wife and Elizabeth W. Fitch, respectively, shall be fully released and discharged of record, all of said property being held in the aggregate simply as security for the payment of the said sum of $30,000.00 and interest, and no other or greater sum." It was also stated in the contract that "it is agreed that the taxes shall be promptly paid by John Fitch and Elizabeth W. Fitch, and in case of default in the payment of interest, or of any taxes or assessments, then that the mortgage, hereby created on the twenty acres and lot 156 herein described, may be foreclosed on said default, said Miller having the power on any default to declare the whole sum due and to foreclose." It was also therein agreed that, on the full payment of the $30,000.00 and interest, and the closing up of the entire transaction,

the mortgage from William Miller to John Fitch on the twenty acres therein described, and lot 156 aforesaid, should be discharged of record.

The original deed from William Miller and wife to John Fitch, which was held in escrow by Robert Hervey, was dated July 3, 1875, conveying the premises in question in consideration of $30,000.00. Late in the year 1875 John Fitch left Illinois, and went to Kansas to live. Upon learning of his death, which took place on July 20, 1878, Robert Hervey handed over the deed he was holding in escrow to Thomas L. Parker, the agent of William Miller. On December 23, 1875, the mortgage which had been executed by William Miller to John Fitch to secure the two notes, one for $10,000.00 and the other for $15,000.00, was released, and the release deed dated December 23, 1875, was recorded on that day, and was produced upon the hearing of this cause upon notice by the heirs of William Miller. The deed, however, in Hervey's hands was never delivered to John Fitch, nor was any demand made upon Hervey for it by either John Fitch in his lifetime, or by any of his heirs or representatives after his death.

The mortgages for $7500.00 each, referred to in the contract of October 5, 1875, were second mortgages, and the first mortgage, to which they were subject, was foreclosed in the circuit court of the United States for the Northern District of Illinois, and the property was sold, leaving a deficiency unsatisfied of over $15,000.00, for which decree was entered on June 26, 1878, against John Fitch. The notes for $7500.00 secured by these mortgages are brought into court by Miller or his representatives, subject to the order and direction of the court, the mortgages securing them having been cut off by the foreclosure already named.

GAGE & DEMING, for plaintiffs in error.

WILLARD & EVANS, for defendants in error.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The record presents the case of a deed, made by John Fitch, deceased, to William Miller, deceased, which, though absolute upon its face, was in fact intended by the parties to be a mortgage to secure a loan of $30,000.00 by Miller to Fitch. It is true, that in the first place Fitch sold the twenty acres and lot 156 to Miller for $30,000.00, and executed a deed to him dated March 5, 1874, conveying the land. Miller paid upon the purchase money $5000.00 in cash and the first note of $10,000.00, leaving a note for $15,000.00, secured by a mortgage upon the premises still unpaid. The testimony shows, however, that, in addition to the $15,000.00 so paid by Miller, he afterwards paid to Fitch the remaining $15,000.00 of the $30,000.00, and Miller's·note for $15,000.00 was taken up and surrendered to him, and the mortgage securing it was released. By agreement between the parties, as embodied in the contract of October 5, 1875, the transaction was changed from a sale of the twenty acres into a mortgage thereof to secure an indebtedness of $30,000.00. Whether Miller became satisfied that he had been imposed upon, and that the twenty acres were not worth $30,000.00, or not, does not appear from the evidence, but, after having paid $15,000.00 of the purchase money, he refused to pay the remainder. The deed, which was first intended as an absolute conveyance to carry out the sale, was, by agreement between the parties, made a mortgage to secure $30,000.00.

We do not deem it necessary to discuss the evidence in relation to the accounts, and in relation to the advances made by Miller to Fitch to make up the $15,000.00 which was paid, over and above the original $15,000.00. The evidence is clear to our minds that Miller advanced to Fitch the whole of the $30,000.00. The title to the property was in Miller. He executed a deed conveying the property back to Fitch, but this deed was never de-

livered. On the contrary, it was placed in the hands of Robert Hervey, an attorney, to be held by him in escrow, and only to be delivered to Fitch upon the payment by Fitch to Miller of the $30,000.00 and interest.

It is clear from the statement of the facts that, after the execution of the contract of October 5, 1875, the legal title to the twenty acres was in Miller, and only the equity of redemption, or a right to redeem the same by the payment of $30,000.00, remained in Fitch. In his lifetime, Fitch never paid back to Miller any portion of the $30,000.00, nor after 1875 did he ever pay any of the taxes or assessments against the property.

Inasmuch as Fitch, upon his death on July 20, 1878, had nothing but an equity of redemption in the premises, nothing descended to his four children, the plaintiffs in error herein, except such equity of redemption. On January 7, 1897, a little more than seven months before the filing of the present bill, plaintiffs in error John H., Timothy S., Beatrice and Mary A. Fitch conveyed, for a consideration of one dollar, an undivided five-eighths of the twenty acres to Garrie S. French, and then this bill was filed for the partition of the equity of redemption, inherited by plaintiffs in error from their father, John Fitch. The partition is sought, subject to what is called in the bill the cloud or lien, created by the deed from Fitch to Miller, and the contract of October 5, 1875, between Miller and Fitch, and the other proceedings heretofore detailed.

It is true that an equitable title in lands may be the subject of a bill for partition. (*Johnson* v. *Filson*, 118 Ill. 219; *Bissell* v. *Peirce*, 184 id. 60). The mortgage here under consideration, being created by an absolute deed of the property made to the mortgagee, and taken in connection with the contract of defeasance executed on October 5, 1875, is what may be regarded as an equitable mortgage in contradistinction from a legal mortgage. The contract of October 5, 1875, was not under seal. "The in-

strument of defeasance must be of as high a nature as the deed itself; and consequently a written agreement to re-convey, not under seal, though made at the same time with the deed, does not at law constitute a mortgage. If not under seal, the agreement will constitute a mortgage only in equity." (1 Jones on Mortgages,—4th ed.— sec. 244; *Kelleran* v. *Brown*, 4 Mass. 443. *Phelan* v. *Fitzpatrick*, 84 Wis. 249; *West* v. *Reed*, 55 Ill. 242; *Green* v. *Capps*, 142 id. 286). Inasmuch as the interest of John Fitch before his death amounted, and the interest of the present plaintiffs in error, his heirs, since his death, amounts only to a mere right of redemption, and inasmuch as the right of redemption is a purely equitable estate, a court of chancery will not protect and enforce it, unless equitable considerations require it to do so. (*West* v. *Reed*, *supra; Spect* v. *Spect*, 88 Cal. 444).

The question then arises whether there are any equitable considerations, which entitle the plaintiffs in error to a partition of the premises in controversy. If equitable considerations require that plaintiffs in error should not be allowed to redeem the premises in question, then the court below decided correctly in dismissing the bill, and refusing partition of the property, because, in such case, no equity of redemption existed to be partitioned.

The evidence shows clearly that Miller advanced to Fitch in his lifetime upon the property in question the sum of $30,000.00. It is equally clear from the proofs that neither Fitch, nor his heirs, have ever paid back any part of the $30,000.00, or any interest thereon. It is also established by the testimony that, between 1875 and the filing of the present bill in 1897, Miller paid more than $22,000.00 for taxes and special assessments upon this property, and in redeeming the property from sales and forfeitures for non-payment of taxes. The property was forfeited for the non-payment of taxes during the years from 1870 to 1875. No offer is made by the plaintiff in error, John H. Fitch, who filed the bill for parti-

tion in the court below, to re-pay to Miller any part of
the money, advanced by him as a loan or for taxes. By
the terms of the mortgage, as expressed in the contract
of October 5, 1875, the indebtedness of $30,000.00 was to
be re-paid by Fitch to Miller within five years, that is,
on October 5, 1880. From the latter date to the filing
of the present bill for partition seventeen years passed.
The plaintiff in error, Mary A. Fitch, who was born on
April 6, 1859, became of age on April 6, 1877, and was of
age when her father died. The petitioner, or complain-
ant, John H. Fitch, who was born July 5, 1862, became
of age on July 5, 1883, fourteen years before he filed the
present bill for partition. Timothy S. Fitch, who was
born on November 15, 1867, became of age on November
15, 1888, nine years before the present bill for partition
was filed. Beatrice Fitch, who was born on January 1,
1871, became of age on January 1, 1889, more than eight
years before the filing of the present bill for partition.
It is clear that, in the present case, the mortgagor, John
Fitch, and his heirs, the present plaintiffs in error, who
stand in his place, have been guilty of *laches* in not sooner
seeking to enforce their right of redemption.

*Second*—Counsel for plaintiffs in error seem to claim
that, in some way, Fitch, in his lifetime, and his heirs
since his death, have become possessed of the legal title
by reason of the deed, executed by Miller to Fitch on
July 3, 1875, and placed in the hands of Mr. Hervey. The
evidence is quite clear, however, that this deed was so
placed in the hands of Mr. Hervey as a deed in escrow,
only to be delivered to Fitch when he paid up the $30,-
000.00 and interest. The money was never paid, and
there was never any delivery of the deed. A deed never
becomes effective to pass title, unless there is a delivery
to the grantee, and, in the present case, there was no
such delivery. Where a deed is deposited as an escrow,
it is nothing more than a mere scroll, until the condi-
tion is performed, which makes its delivery obligatory.

Prior to that time no title passes without the grantor's consent, and here the grantor, Miller, never gave his consent. The grantee, Fitch, could only have acquired title by the performance of the condition, or the happening of the contingency, and, as the condition was never performed and the contingency never happened, Fitch was never vested with the legal title to the property. Where a grantor executes a deed, and delivers it to a third person to be delivered to a grantee upon some future event, it is not the grantee's deed until the second delivery. (11 Am. & Eng. Ency of Law, p. 349; *Demesmey* v. *Gravelin*, 56 Ill. 95; *Skinner* v. *Baker*, 79 id. 496; *Furness* v. *Williams*, 11 id. 229; *Stanley* v. *Valentine*, 79 id. 544).

*Third*—As we understand counsel for the plaintiffs in error, their contention is that, although the legal title was conveyed to Miller by the deed of March 5, 1874, yet, in view of the terms of the contract of October 5, 1875, a foreclosure would be necessary in order to divest Fitch, or his heirs, of such equity of redemption as was left in them. This contention is without force. No affirmative action was required on the part of Miller, or his executors, or devisees, to become invested with the title. Miller, as mortgagee, had the entire title, and all that remained in Fitch was merely a right to pay up the amount of the loan and redeem the premises. In *West* v. *Reed*, 55 Ill. 242, we said (p. 245): "We do not, however, assent to the position, which we understand counsel for appellee to assume, that, when the original transaction between the parties has not been in form a mortgage, but an absolute deed, with a bond to re-convey on the payment of the money at a specific time, the right of redemption cannot be extinguished, except by an instrument which will operate as a technical conveyance of the mortgagor's estate in the land. He undoubtedly has an estate, which will pass by descent, or devise, or by deed. But it is nevertheless a purely equitable estate, that is to say, an interest in the land based upon equi-

table grounds, and which a court of chancery will protect and enforce when equitable considerations demand. But he has nothing more. The legal title has gone to his grantee by means of a deed absolute upon its face. If the deed, as in the present case, was made to secure a loan of money, and a bond, or contract to re-convey, is taken, the transaction, in a court of equity, is regarded only as a mortgage. But we repeat, the naked legal title has vested in the grantee, and, if such transactions subsequently occur between the parties, as would render it inequitable that the grantor should be permitted to redeem, a court of equity will, of course, refuse to aid him, as it will always refuse its aid to perpetrate a wrong. It is wholly immaterial whether he has executed a technical release of his equitable interest to the grantee or not. * * * And without having done that, he may have had such transactions with his grantee, as would render it inequitable to compel the grantee to suffer a redemption. In such an event, the equitable estate is practically gone or annihilated without a release, because the equitable considerations, upon which it rested, are destroyed by the acts of the parties, and chancery will leave the legal title where they have placed it." To the same effect is *Green* v. *Capps*, 142 Ill. 286.

As the equitable considerations, developed by the proof in this case, are of such a character that it would be unjust to permit the present plaintiffs in error to exercise any right of redemption, a court of equity will leave the legal title, where it exists, in the devisees or heirs of William Miller, without the execution of any further instrument by the heirs of John Fitch, or without any further proceeding to foreclose.

*Fourth*—The plaintiff in error, John H. Fitch, in his bill, filed below, substantially pleads the Statute of Limitations, that is to say, alleges that the mortgage from Fitch to Miller, created by the deed and the contract, was barred by the Statute of Limitations. The loan of

$30,000.00 from Miller to Fitch, which was secured by the deed and contract, matured or was due on October 5, 1880. Section 11 of the Limitation act provides that "no person shall commence an action or make a sale to foreclose any mortgage or deed of trust in the nature of a mortgage, unless within ten years after the right of action or right to make such sale accrues;" and on October 5, 1890, the period of ten years had elapsed. The representatives of Miller, however, are not seeking to foreclose the mortgage. On the contrary, in their answer they plead the Statute of Limitations against the right of the plaintiffs in error to enforce their alleged equity of redemption, that is to say, they aver that the plaintiff in error, John H. Fitch, is estopped from seeking to exercise any right to redeem by reason of *laches* and delay. It being true that the right to foreclose is barred, then it follows that the right to redeem from the mortgage is barred. The right to foreclose and the right to redeem are reciprocal, and when one is barred, the other is barred. In *Green* v. *Capps*, 142 Ill. 286, we said (p. 289): "Appellant concedes that the deed, regarded as a mortgage, could not have been foreclosed when this bill was filed, because the indebtedness it was given to secure was then barred by the Statute of Limitations. But if the Statute of Limitations then barred a foreclosure, it, for the same reason, barred a redemption from the deed, regarded as a mortgage, for the right to redeem and the right to foreclose are reciprocal, and when the one is barred the other is barred." (See also *Walker* v. *Warner*, 179 Ill. 16; *Carpenter* v. *Plagge*, 192 id. 82). Clearly, therefore, if the right to foreclose on the part of Miller's estate is barred, the right to redeem on the part of the heirs of Fitch is barred.

*Fifth*—Plaintiff in error, John H. Fitch, presented no facts in his bill, which tended in any way to excuse the delay in commencing the proceeding to redeem. As Miller, or his representatives, set up the Statute of Limita-

tions and *laches* in their answer as a defense to the right to redeem, it then devolved upon the plaintiff in error to amend his bill, and allege an excuse for his *laches.* (*Hall* v. *Fullerton,* 69 Ill. 448; *Walker* v. *Ray,* 111 id. 315; *Harding* v; *Durand,* 138 id. 515; *Kerfoot* v. *Billings,* 160 id. 563; *Coryell* v. *Klehm,* 157 id. 462). But no amendment was made to the bill, nor any excuse therein set up.

It is claimed, however, on the part of the plaintiffs in error, in the testimony introduced by them, that they had no information in regard to the existence of the contract of October 5, 1875, until about the time of the filing of this bill in August, 1897. It is not claimed, nor can it be under the evidence, that the failure to have such knowledge was caused by any fraudulent conduct on the part of Miller, or his devisees or heirs. (*Cilley* v. *Huse,* 40 N. H. 362). The contract of October 5, 1875, was placed on record a day or two after its execution, and the plaintiffs in error had constructive, if not actual, notice of its existence. Their father, John Fitch, was aware of the existence of the contract, because he signed it as one of the parties thereto, and the plaintiffs in error, as his heirs, are chargeable with the notice which their ancestor had. Independently of this consideration, however, the evidence shows no diligence on the part of plaintiffs in error to ascertain what rights they might have in this property.

The record shows that, on December 31, 1890, seven years before the filing of the present bill for partition, the four plaintiffs in error, children of John Fitch, filed in the superior court of Cook county a bill, signed by all of themselves, against one John Gray, in which they state that they were then residents of Cook county, and that their father died seized of said lot 156 above described, which was conveyed by the deed from Fitch to Miller, and which is mentioned in the agreement of October 5, 1875. Any examination of the record as to lot 156 would have revealed the fact, that it was mentioned in the agreement of 1875, and would also have shown that

the tract of twenty acres here in question was mentioned in the contract. In other words, any search or inquiry as to lot 156 would have led to information in regard to the twenty-acre tract here in controversy, and the contract of October 5, 1875, in relation thereto. It is also shown that, in 1882, the plaintiffs in error were making efforts to recover other property in said south shore subdivision in which lot 156, part of the purchase by Miller, was located. No effort seems to have been made by any of the plaintiffs in error to ascertain whether they had any rights or not in the twenty acres. When plaintiff in error, John H. Fitch, filed the present bill, he had been of age fourteen years. During all the period of time from 1875 to 1897 Miller paid in his own name all the taxes and special assessments accruing upon the property from year to year. In May, 1882, he paid for redemption and forfeitures, $7283.16, and subsequently paid $15,580.68 of taxes in his own name as owner. In 1892 Miller took possession of the twenty acres, and fenced it, and put a tenant by the name of VanArkle in possession. Condemnation proceedings were also instituted against Miller, as owner of the property, by the city of Chicago, and by a railroad company, and the condemnation money was paid to Miller as owner of the premises.

In *McDearmon* v. *Burnham*, 158 Ill. 55, we said (p. 62): "When a court of equity is asked to lend its aid in the enforcement of a demand that has become stale, there must be some cogent and weighty reasons presented why it has been permitted to become so. Good faith, conscience and reasonable diligence of the party seeking its relief are the elements that call a court of equity into activity. In the absence of these elements the court remains passive, and declines to extend its relief or aid. It has always been the policy to discountenance *laches* and neglect." (See also *Kerfoot* v. *Billings, supra; Eastman* v. *Littlefield*, 164 Ill. 124; *Carpenter* v. *Carpenter*, 70 id. 457; *Brown* v. *Brown*, 142 id. 409; *Williams* v. *Rhodes*, 81 id. 571;

*Connely* v. *Rue,* 148 id. 207; *Bush* v. *Sherman,* 80 id. 160; *Miller* v. *Shaw,* 103 id. 277; *Hoyt* v. *Pawtucket Inst. for Savings,* 110 id. 390; *Fitch* v. *Willard,* 73 id. 92). Where a party, seeking to exercise the right of redemption, fails to pay taxes, or make any payment upon the mortgage, such failure indicates an abandonment of the property, and, under such circumstances, it would be inequitable to allow a redemption. In determining whether there has been *laches* in exercising the right of redemption, a court of equity is not necessarily controlled by the period of limitation, as fixed in actions at law; a delay for a much less period than that prescribed by the Statute of Limitations will, according to the circumstances of the case, be held to be *laches,* and a bar to the right of redemption. (*Walker* v. *Warner,* 179 Ill. 16).

A court of equity will not decree partition among the holders of an alleged equitable title, unless such title is a meritorious and subsisting one. Partition will not be decreed of such a title, when it can be no longer asserted in a court of equity as against the holders of the legal title. Such a state of facts exists in the case at bar.

The decree of the circuit court, dismissing the bill for want of equity, is affirmed.                    *Decree affirmed.*