FLORENCE BUTMAN, Admx.

*v.*

THOMAS H. BUTMAN *et al.*

*Opinion filed December 22, 1904.*

1. JURISDICTION—*filing a demurrer gives jurisdiction of person.* Filing a demurrer to a bill, the appearance of the parties demurring being unlimited, gives jurisdiction of the person as complete as though there had been personal service.

2. PARTIES—*what is not a misjoinder of parties.* Naming the widow in her individual capacity and in her capacity as administratrix as parties complainant in a bill against heirs to compel specific performance of contract to convey land is not misjoinder of parties.

3. EQUITY—*when bill for specific performance is a proper remedy.* If the personal representative of a deceased person is unable to carry out her intestate's contract for the sale of land because of the refusal of the heirs to join in the conveyance to the proposed vendee, who is ready and willing to complete the contract, the personal representative may maintain a bill in equity against the heirs to compel specific performance.

4. EXECUTORS AND ADMINISTRATORS—*section 4 of act relating to contracts construed.* Section 4 of the act relating to contracts, authorizing the personal representative of one who has contracted, in his lifetime, for the sale of land, to obtain an order of court for the execution of the necessary deed when the consideration has been paid, upon notice to the party to whom the deed is to be made, does not require notice to the heirs of the deceased vendor.

5. PLEADING—*when defense of the Statute of Frauds cannot be raised by demurrer.* Failure of a bill for specific performance of a contract for the sale of land to allege that the authority of the agent who made the sale was in writing is not ground for demurrer, where the bill alleges that the sale was made by the agent and ratified by the principal, in writing, in his lifetime.

6. CONTRACTS—*not essential to validity of a contract that seller know name of purchaser.* A contract for the sale of land, made by an agent within the terms of his written authority and ratified by the principal with full knowledge of the terms of the sale, is not invalid because the name of the proposed purchaser was not disclosed.

7. SPECIFIC PERFORMANCE—*what is not ground for demurrer to bill.* A bill by an administratrix against the heirs to compel them to join in a conveyance in pursuance of a contract of sale made by the intestate in his lifetime, is not demurrable because it fails to allege the sale is necessary for the payment of debts of the estate.

8. SAME—*courts cannot consider policy of a valid law.* In the exercise of its discretion in the matter of specific performance the court may consider the effect upon the parties interested in the property under the law, the result to the property and the equities of the parties as controlled by the law, but cannot consider the question of the wisdom or policy of the law itself.

APPEAL from the Circuit Court of Macon county; the Hon. W. C. JOHNS, Judge, presiding.

Appellant, Florence Butman, as administratrix of the estate of Jonathan W. Butman, deceased, and in her own right, as widow and heir-at-law of said Butman, filed a bill in chancery to the January term, 1904, of the circuit court of Macon county, for the purpose of compelling the specific performance of a contract to convey certain real estate. The bill alleges that Butman, in his lifetime, owned a certain residence property in Decatur, with a frontage of sixty-five feet on West William street; that during his lifetime he made a contract with one John N. Hill to sell the said property for $6000, but that before the contract could be consummated by making a deed Butman departed this life on October 12, 1903. It is also alleged that Butman died intestate, leaving no child or children or descendants of a child or children him surviving, but left Florence Butman, his widow, and Florence Butman and the appellees, Thomas H. Butman, Albert A. Kendall, Estella J. Vant, Millicent L. Barker, Amey Warner, Henry W. Jameson and William Jameson as his sole and only heirs-at-law. The bill further alleges that John N. Hill, the vendee, is willing that the contract shall be performed and to accept a deed for the property if he can obtain a deed from all the heirs or through a decree of court, but the heirs aforesaid refuse to make a deed for the property unless the proceeds are treated as real estate. The bill alleges that the proceeds of the sale and the right to enforce the contract are choses in action, to be collected by the administratrix and to be accounted for in due course of administration.

The alleged contract is set out in the bill, and consists of numerous checks, telegrams, letters and memoranda. The bill alleges that Butman authorized his agents, Jesse LeForgee & Co., to sell the property for $6000; that they procured a purchaser for the property in the person of John N. Hill, who agreed to pay $6000 cash upon delivery of a deed. As an evidence of said contract and to make the same binding, John N. Hill, on September 22, 1903, gave his check to Jesse LeForgee & Co., payable to the order of Butman, for $100, and the check recites on its face, "On purchase of his property through the agency of Jesse LeForgee & Co." Jesse LeForgee & Co. accepted the check on behalf of Butman as a binding payment upon the purchase price of the property. On the same day LeForgee & Co. telegraphed to Butman, who was then in Cleveland, Ohio: "Have sold your property for $6000; answer if all right." On the next day, not having received a reply, they sent a second telegram: "Telegraphed you yesterday your property is sold for $6000; did you get it? Answer." Butman telegraphed a reply to his agents: "Your telegram received this morning; all right; letter coming to-day." At the same time Butman wrote his agents confirming the telegrams, saying: "It is all right. * * * Glad you have found a customer. Try and bind the bargain so there will be no backing out. * * * Is it a cash or part time and part cash?" On receipt of this letter LeForgee & Co. wrote Butman, saying: "We have taken a cash payment on the sale of your property that fully binds the party. * * * In regard to the price, it is $6000 cash on the delivery of the deed, you to furnish an abstract of title down to date showing a good title." On the same day, before receiving this last letter, Butman again wrote LeForgee & Co.: "I told you the sale was all right, and told you to make arrangements with Mr. Hill about leaving the house. I told him I would give him thirty days, and more if the one that bought it could arrange with him to let him for any longer time." Hill had been occupying the house as a

tenant. On September 25, 1903, Butman received the letter from LeForgee & Co. in regard to the terms of sale, and again wrote LeForgee & Co., saying he expected to come home the last of the following week, and "it will be all right when I get there."

The bill further alleges that in pursuance of the contract Hill, on October 8, 1903, before Butman's return, deposited a check in escrow with the Millikin National Bank, to the order of Butman, for $6000, to be delivered upon the execution of a deed and the surrender of the $100 check, and that LeForgee & Co. were notified of the deposit of the check. It is also alleged that the property mentioned in the letters, telegrams and checks as "your property," "his property" and "the Hill property" was the property which is specifically described in the bill, which had been occupied by Hill as a tenant but whose lease expired October 1, 1903. It is also alleged that after October 1, 1903, Hill remained in possession claiming under his contract, and that he had more than sufficient money in the bank to pay the check. It is further alleged that Hill was shown all of the letters and the telegrams received by LeForgee & Co. from Butman, and knew that Butman had therein and thereby ratified and confirmed the sale made by the agents to him. The bill alleges that by reason of the letters, telegrams and checks a contract was created, binding upon Hill and Butman, and that upon Butman's return to Decatur upon October 9, 1903, he was informed that Hill was the purchaser, but that before the papers could be prepared to consummate the sale Butman departed this life.

A general and special demurrer was filed by the heirs to the bill and the same was sustained by the court. An amended bill was also filed, to which a demurrer was also sustained. Appellant filed a second amended bill, and her suit was dismissed for want of equity. Appellant prayed an appeal from the order sustaining the demurrer to the second amended bill and dismissing the amended bill for want of equity, to the

Supreme Court, and has assigned the following errors: (1) The court erred in sustaining the demurrer to the second amended bill of complaint; (2) the court erred in dismissing the said amended bill of complaint for want of equity; (3) the court erred in entering a decree for costs against the complainant.

HUGH CREA, and HUGH W. HOUSUM, for appellant.

E. S. McDONALD, for appellees.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

As this bill was dismissed upon demurrer and the assignments of error relate only to the action of the court in sustaining the same, our consideration will be directed to the grounds of the demurrer.

Ten special grounds were urged. In the first the point is made that as the service was by publication and the proceeding one *in personam* and not *in rem,* the court did not have jurisdiction of the persons of the defendants. To this ground it is sufficient to say that all of the defendants, except those personally served and defaulted or personally answering, interposed demurrers to the original, amended and second amended bills, and their appearance in court was unlimited and the jurisdiction as complete as though there had been personal service. *Protection Life Ins. Co.* v. *Palmer,* 81 Ill. 88.

In the second ground of demurrer it is urged that there is misjoinder of complainants, in that Florence Butman as administratrix and Florence Butman in her own right as widow and heir-at-law of Jonathan W. Butman are joined. It would be novel to find authorities sustaining the proposition that Florence Butman, as administratrix, could sue herself as widow and heir for the enforcement of the contract of the decedent. It is sufficient that the heirs may be made parties so that they may be heard and their rights adjusted, and

it is immaterial whether they join with the personal representative as complainants or are made defendants. *Duncan* v. *Wickliffe,* 4 Scam. 452; *Burger* v. *Potter,* 32 Ill. 66.

It is next urged that the appellant had a remedy at law to recover upon the contract. This could not be so. The purchaser did not refuse to perform, but, according to the bill, is now and at all times has been ready and willing and able to perform, while appellant, as personal representative of the decedent, is unable to perform, and has been since the death of the decedent, because of the refusal of the heirs to join in the conveyance. The decedent was to furnish an abstract showing title and make a deed, and the purchaser was to pay when that was done. Before the decedent returned home and before the deed was required to be made the purchaser placed a check for the money in escrow, where it has since remained. We have no doubt that this is the proper form of procedure. *Hulshizer* v. *Lamoreaux,* 58 Ill. 72.

As to the next ground, appellees cite and rely upon section 4 of chapter 29 of Hurd's Statutes, which provides: "The executor, administrator or heirs of any deceased person who shall have made such contract, bond or memorandum in writing, in his lifetime, for the conveyance of land, for a valuable consideration, * * * when such consideration has been paid and fulfilled as aforesaid, or a conveyance ought to be made, may, upon application in writing, obtain such order upon giving notice to the party to whom such deed is intended to be made, and under the same condition as is provided in this chapter." Under this objection it is contended that sufficient is not shown by the bill to bring the case within the requirements of this statute, and it is said, among other things, that no notice was served upon the appellees and that payment has not been made. The statute does not require service upon appellees, who represent the vendor, but the requirement is that the notice shall be to the vendee. The allegations of the bill are, that the vendee is ready and willing to perform and that the appellees refuse to

join in the conveyance, and they are in court, were served by publication and voluntarily subjected themselves to the jurisdiction of the court. No authority is offered in support of the contention other than the construction of the statute placed upon it by counsel for appellees, and we are unable to adopt the view of the statute urged by him.

The fifth ground of demurrer is, that the bill fails to disclose a valid agency existing between the vendor and Jesse LeForgee & Co., the agents who sold the property. The bill alleges that the decedent listed the land with the agents for sale; that they did make a sale, notified their principal thereof and of the terms of the sale, and that he, in various written telegrams and letters signed by him, confirmed and ratified the same. Under such circumstances it would seem immaterial whether the agent originally had written authority to sell or not. (*Fowler* v. *Fowler,* 204 Ill. 82.) It may be further remarked that the bill is silent as to whether the original authority was written or verbal. The allegation is, that "during his lifetime, and shortly prior to his death, the said Jonathan W. Butman listed his real estate with John E. Patterson and Jesse LeForgee & Co., doing business under the firm name and style of Jesse LeForgee & Co., as real estate agents in the city of Decatur, and suggested that they procure a purchaser for said real estate." There are also the further allegations, in substance, that the agents did procure a purchaser and did sell, and these allegations are admitted by the demurrer. The case of *Fowler* v. *Fowler, supra,* was very similar to the case at bar, and it was there contended that the dismissal of the bill was proper because the bill did not show, upon its face, whether the agent was authorized, in writing, to act, and it was there said (p. 103) : "But it will not be presumed that his authority was a mere verbal one and within the Statute of Frauds because the bill does not allege that his authority was in writing. The benefit of the Statute of Frauds as a defense can be taken by demurrer only when it affirmatively appears from the bill that the

agreement relied upon is not evidenced by a writing duly signed.' (*Hamilton* v. *Downer*, 152 Ill. 651.) Inasmuch as it does not affirmatively appear from the bill in this case that the authority of Underwood is not evidenced by a writing duly signed, the Statute of Frauds cannot be used as a defense by demurrer." As we have said, we do not think it material whether the agent's authority was in writing or not, as the principal, with full knowledge of the sale and the terms and conditions thereof, ratified the same in writing, and it is as binding as though he had given written authority, in the first instance, to make the sale.

The sixth and seventh grounds relied on by appellees are, that the letters, telegrams and various written documents set out in the bill did not constitute a contract of sale for the lands described in the bill. Supporting this contention, the appellees point out that Butman, the vendor, so far as disclosed by the writings, had no communication with Hill, the vendee, and had no knowledge that he had become the purchaser. We do not think this fact, if it is a fact, is controlling. If it should be assumed that the agents had written authority to make the sale it would be immaterial whether the vendor of the property knew the name of the purchaser or not. If the sale was made by his authority to any person he would be bound to perform. The bill clearly disclosed that a sale was made and that he was apprised of it in all its details, save the name of the purchaser, and without inquiring as to the identity of the purchaser he ratified the acts of his agents in such manner as can leave no doubt in the mind of the court that, so far as the vendor was concerned, the name of the purchaser was to him a matter of indifference. The price, the terms of sale and the time of performance were the matters upon which he dwelt, and not the identity of the purchaser. The object uppermost in his mind seemed to be that the purchaser, whoever he might be, would be so bound and in such condition as he could and would pay the purchase money, as in his first letter he says: "Glad you have

found a customer; try and bind the bargain so there will be no backing out." The bill alleges that before Mr. Butman returned to Decatur, by arrangements with his agents, the purchaser placed in the Millikin Bank, in escrow, his check for the full amount of the purchase money. This cannot be looked upon in any other light than the performance, by his agents, of his direction to bind the bargain so there would be no backing out. He also, in the same letter, directed his agents to arrange with Mr. Hill, the occupant of the premises, for vacating them, as he had agreed to give him thirty days' notice of any sale. Taking the letters of Mr. Butman and giving them their ordinary interpretation we can come to no other conclusion than that the agents were carrying out and acting within the written authority conferred upon them by the letters. The agents had unmistakable authority to make the sale upon the terms stated, and they knew the purchaser, and what they knew, within their authority, was sufficient to bind their principal.

It is further said that in some of his letters decedent expressed doubt as to the time he would come home, and that from that fact the inference must be drawn that he did not regard the transactions as a sale, but only looked upon them as negotiations for a sale. We do not regard this construction as warranted by the letters, but look upon them as the prudent remarks of one absent from home, whose presence was necessary for the transaction of important business and yet the exact time of whose return was uncertain, but was not to be beyond a week or so.

By the eighth, ninth and tenth grounds of demurrer it is urged that the bill does not disclose that the sale was necessary for the payment of debts of the estate; that it does disclose that the appellant is seeking to convert real estate into personal property, so that she may, under the rule of descent, derive a greater portion thereof than she would if it should remain real estate, and that as between the parties the equities require that the property should remain and be treated

as real estate. No authority is cited, and none can be, as we believe, sustaining the proposition that a bill for specific performance of this contract could not or should not be allowed unless the funds arising therefrom are necessary for the payment of the debts of the decedent. Whether the property be regarded as real or personal, appellant was materially and directly interested therein in her individual capacity. If treated as real estate she is the owner of half of it in fee, and if personal property, the whole of it, subject, of course, in both cases, to the payment of the debts of the decedent. The owner of property may, by deed, will or other conveyance, dispose of it as to him seems best, but if he die without making any disposition of it it takes the course directed by the Statute of Descent. As to the policy of the statute that gives to the widow of an intestate who leaves no child or children, or descendants thereof, half of his real estate and all of his personal property, that matter is referable to the legislative authority and not to the courts. We are not authorized to withhold or grant relief upon the ground that we disapprove of or approve the policy of the legislative act. While it is true that many authorities may be found in which it is declared that the courts are vested with a large discretion in the consideration of bills for specific performance, it has been nowhere intimated that their notions of the policy of a valid law shall be in any part the basis upon which such discretion is predicated. The court may take into consideration the effect upon the parties who are interested in the property, under the law, and the result to the property itself, and the equities of the parties as controlled by the law, in the exercise of its discretion. By this demurrer it is in no way pointed out to the court that it will be disadvantageous to the property interests or to the individual interests of those having a legal claim upon this property if the prayer of the bill is granted. It is not shown that the consideration is not fair, that the estate will suffer any prejudice or wrong, or that the creditors who may have claims against the estate will be

prejudiced by it. What may be developed upon a trial we are not called upon to anticipate. It is sufficient that we regard the bill as stating a case to entitle the appellant to the relief prayed.

It was error to sustain the demurrer, and the decree dismissing the bill will be reversed and the cause remanded for such further proceedings as to law and justice shall appertain.                    *Reversed and remanded.*