Albert J. Vetesnik and Pavlina Vetesnik, Appellants, v. Ernst Magull and Selma Magull, Appellees.

Gen. No. 35,046.

Opinion filed July 6, 1931.    Rehearing denied July 20, 1931.

CHARLES A. CHURAN, for appellants.

PINES, MORSE & STEIN, for appellees; ALVIN E. STEIN, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

By this appeal complainants ask the reversal of a decree dismissing for want of equity their amended bill, which sought to establish a vendor's lien to the amount of $7,000 on certain real estate purchased by defendants from complainants.  An answer was filed

on behalf of defendants and the cause referred to a master in chancery whose report recommending a dismissal of the bill was approved by the chancellor.

The question presented involves the dishonesty of a real estate agent, Joseph Beck, to whom the defendants paid the purchase price for the lots but who did not turn over the same to complainants and subsequently absconded.

The record shows that complainant Albert Vetesnik became acquainted with Beck sometime in 1925 and through him had consummated at least two purchases of real estate. On and prior to October, 1926, complainants owned the lots in question, which were vacant and unoccupied. The master found that Beck first spoke to Albert Vetesnik with reference to the sale of these lots on September 15, 1926, and Vetesnik agreed to sell them. The following day complainant gave Beck an abstract of title, which was turned over to defendants, the proposed purchasers. This abstract was afterwards examined by defendants' attorney and certain objections to the title were made. Beck reported to Vetesnik these objections, which required other deeds from the former owner of the property, and the deeds were procured and delivered to Beck. The master also found that on October 14, 1926, Ernst Magull, one of the defendants, together with his attorney met Beck by appointment at Beck's office for the purpose of closing the deal; that Beck did not notify Vetesnik that he was about to close the deal and complainants were not present. Beck had in his possession at the time a warranty deed, dated October 5, 1926, conveying the property from complainants to the defendants. Defendants had previously, on September 14, deposited $400 with Beck as earnest money. At the time of the closing of the sale certain deductions were made for taxes and the balance was then paid as follows: a cashier's check for $4,500 payable to the order of Ernst Magull, and another

cashier's check on another bank for $2,200 payable to the order of Magull, were indorsed by him in blank and delivered to Beck, who thereupon delivered to defendants the warranty deed from complainants conveying the lots to them. The deed to defendants was recorded in the recorder's office of Cook county on the same day, that is, October 14, 1926. Beck did not report to Vetesnik that he had closed the sale, but kept the money in his own possession. Vetesnik called Beck at various times, inquiring about the progress of the deal. January, 1927, Beck told Vetesnik that the purchasers could not get the money for six months because of a loan they had made to friends. Vetesnik next called Beck in June and was told that the deal had not been closed. August, 1927, defendants commenced the construction of two bungalows on the property in question. Beck disappeared in September, 1927. Defendants did not know of any claim by complainants for the purchase price until the present bill was filed, at which time the buildings now on the premises were in process of construction.

The master found that there was no written contract between the parties; that Vetesnik delivered the deed to Beck; that defendants did not meet complainants at any time during negotiations for the sale and that when Beck appeared with a warranty deed from complainants the defendants were justified in assuming that he had proper authority to receive the purchase price; that complainants actually ratified the delivery of the deed to defendants and could not now deny the authority of their agent to receive the money.

It is significant, as tending to show knowledge on the part of complainants that the property had been sold to defendants, that while they had paid the taxes on the lots in question in 1925 and in 1926, they made no attempt to pay the taxes in 1927. It is a fair conclusion from this fact that they must have known that

they no longer owned the property. The taxes payable in 1927 were paid by defendants.

A vendor's lien is viewed with disfavor and will not be enforced unless clearly established, and will only be permitted as security for unpaid purchase money. *Ross v. Clark,* 225 Ill. 326.

Defendants point out that complainants had ratified the sale. In their amended bill of complaint complainants alleged that they "sold said premises to defendants for said sum of $7,000 net and in consideration of said sum complainants by warranty deed dated October 5, 1926, conveyed said premises to defendants, Ernst Magull and Selma Magull, his wife," which was afterwards filed for record October 14, 1926. Having thus admitted the sale and ratified the same, the complainants are not entitled to any lien unless the record shows that defendants have not paid the full amount of the purchase price. The record shows without contradiction that the full amount was paid by defendants to Beck. A similar question was involved in *Pardridge v. Bailey & Co.,* 20 Ill. App. 351, affirmed in 134 Ill. 188, where it was held that: "Where the owner whose goods have been sold without authority sues the purchaser for the amount of the contract price for which the goods were sold, the sale, although unauthorized, will be regarded as ratified." The Supreme Court said: "Plaintiffs first deny authority to sell, but by their acts concede the power of sale, but deny authority to collect the pay for the goods. This they cannot do. The power of sale, or the sale without authority, subsequently ratified, carried with it the implied power to receive payment. Had the sale been repudiated by the plaintiffs, and an action brought to recover the goods, a different question would arise." To the same effect are *Swisher v. Palmer,* 106 Ill. App. 432; *Morris v. Tillson,* 81 Ill. 607; *Sternbach v. Leopold,* 50 Ill. App. 476; *Union Mut. Life Ins. Co. v. Kirchoff,* 133 Ill.

368. It has been repeatedly held that ratification operates as though authority had been originally given. *Eau Claire Canning Co. v. Western Brokerage Co.,* 213 Ill. 561; *Butman v. Butman,* 213 Ill. 104; *Donason v. Barbero,* 230 Ill. 138. We hold that the master correctly found that complainants ratified the delivery of the deed to defendants.

Defendants seem to argue that, while they gave authority to Beck to consummate the sale by delivery of the deed, he was not authorized to receive payment for the lots. The sale of real estate is a unit involving, at least, two things—payment of the purchase money and delivery of the deed. The acts are done simultaneously. It would be an anomaly for a seller to authorize an agent to deliver a deed to a buyer and at the same time deny the agent authority to receive the purchase price. Both acts must take place. There can be no sale if either is omitted.

The recording of the deed to defendants October 14, 1926, gave constructive notice to complainants that the sale had been made, and they did nothing about the matter except make requests to Beck for a report as to the transaction until they filed their bill almost a year thereafter. Complainants had constructive, if not actual, notice that the deal had been consummated October 14, 1926. *Fitch v. Miller,* 200 Ill. 170.

Complainants cite a number of cases, but we do not deem them as controlling, as in none of them did 'the principal clothe the agent with *indicia* of ownership and authority to convey the premises. *Mann's Ex'rs v. Robinson,* 19 W. Va. 49, cited by complainants, states that the vendee should retain the money and the vendor the estate until the conveyance is made. In the case at bar the conveyance was made and hence the payment to complainants' agent was proper.

Another reason for affirming the order of the chancellor is found in the principle that, where one or two

persons suffer a loss, the one whose conduct made it possible for the loss to occur must bear the consequences. *Faber-Musser Co. v. Dee Clay Mfg. Co.*, 291 Ill. 240; *Drumm Const. Co. v. Forbes*, 305 Ill. 303; *Otis v. Gardner*, 105 Ill. 436; *McCarthy v. Crawford*, 238 Ill. 38. Complainants, by intrusting the warranty deed to Beck, made it possible for Beck to obtain possession of the purchase money and abscond with it. Applying the rule just stated, the consequences of Beck's dishonesty must rest on the complainants.

We may concede that the attorney who represented the defendants at the time the sale was closed was remiss in not instructing his client to indorse the cashier's checks payable to the vendors. If this had been done, litigation would have been avoided, but this carelessness does not change the essential elements in the transaction. They would be the same, whether the defendants paid by check or in currency. Complainants by intrusting their agent, Beck, with the warranty deed clothed him with apparent authority to consummate the sale. Their subsequent conduct showed that they ratified the same. They therefore have no right to proceed against the defendants, but are relegated to pursue their dishonest agent, Beck.

The decree was proper and it is affirmed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.